THE STATE OF NEVADA, APPELLANT, *v.*
BRIAN EDWARD WADE, RESPONDENT.

No. 19403

April 25, 1989                    772 P.2d 1291

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Chris Owens,* Deputy District Attorney, Clark County, for Appellant.

*Morgan D. Harris,* Public Defender, *Robert L. Miller,* Deputy
Public Defender, Clark County, for Respondent.

# OPINION

*Per Curiam:*

The issue presented in this appeal is one of first impression for
this court, *viz.,* whether a prisoner in another state who is serving
a sentence in a jail, rather than a state prison, may require this
State to comply with Article III(a) of the Interstate Agreement on
Detainers (IAD), NRS 178.620. We conclude that Article III(a)
of the IAD does not apply to prisoners serving sentences in jails.

## FACTS

On April 6, 1987, respondent Brian Edward Wade (Wade) was
arraigned in Clark County, Nevada on charges of burglary and
possession of stolen property. Wade subsequently received an
own recognizance release. Wade failed to appear on the date set
for his preliminary hearing, and the court issued a bench warrant
for his arrest.

On September 8, 1987, a court in Arizona having convicted
Wade of theft sentenced him to serve a one year term of confine-
ment in the Maricopa County Jail. In a letter dated September 11,
1987, Wade informed the Clark County District Attorney's Office
of his confinement in Arizona and requested he be brought to trial
on the pending Nevada charges.[1] In late May, 1988, the Clark
County District Attorney's Office received from Wade a form
letter entitled "Request for Speedy Trial Pursuant to the Inter-
state Agreement on Detainers—Article III." The District Attor-
ney's Office replied and informed Wade that although it planned
to extradite him at the conclusion of his Arizona sentence, it
could not accommodate his request because he was serving time
in a county jail as opposed to the Arizona State Prison.

At the conclusion of his Arizona sentence, this State extradited
Wade. On July 26, 1988 Wade waived his right to a preliminary
hearing and was bound over to district court. Thereafter, Wade
moved to dismiss the charges against him by arguing that the

---

[1]There is no indication in the record whether the District Attorney's Office
received this letter. As explained more fully below, however, we need not
address when Article III(a)'s 180 day period began to run. *See infra* note 3.

State had failed to comply with Article III(a) of the IAD as it had not brought him to trial within 180 days. The State opposed Wade's motion and asserted that a prisoner in a jail could not invoke Article III(a).

At the August 16, 1988 hearing on Wade's motion, the district court did not believe that a prisoner's rights under the IAD depended on whether the institution in which the prisoner was incarcerated was called a jail or a prison. The district court held that the State had failed to bring Wade to trial within the 180 day period required by Article III(a), and, therefore, dismissed the charges against Wade with prejudice. This appeal followed.

## DISCUSSION

The IAD applies only to states that are parties to the agreement. NRS 178.620. Both Arizona and Nevada have entered into the IAD. ARS 31-481; NRS 178.620. When four conditions precedent have been satisfied a receiving state[2] must bring a defendant to trial within 180 days. NRS 178.620, Article III(a). The four conditions are:

> (1) the defendant has entered upon a term of imprisonment in a penal or correctional institution of a party state, (2) during the continuance of that term of imprisonment the charges in question are pending against the defendant in another party state, (3) a detainer based on such charges has been lodged against the defendant, and (4) the defendant has caused written notice and request for final disposition of the charges to be delivered to the appropriate prosecuting authorities and court.

United States v. Hutchins, 489 F.Supp. 710, 713 (N.D.Ind. 1980); NRS 178.620, Article III(a). A state's failure to comply with Article III(a)'s 180 day limitation results in a severe sanction. If the defendant is not brought to trial within the time proscribed, the remedy is dismissal of all charges with prejudice. NRS 178.620, Article V(c).

The purpose of requiring a defendant to be brought to trial within the specified period is set forth in Article I, which, in pertinent part, provides:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner

---

[2]The IAD defines the term "receiving state" as "the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof." NRS 178.620, Article II(c).

treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, information [sic] or complaints. . . .

NRS 178.620, Article I.

The State, distinguishing the function of jails from that of prisons, maintains that the IAD's purpose is not advanced by applying the agreement to defendants incarcerated in jails. Thus, in the State's view, defendants serving sentences in jails should not be entitled to invoke the IAD's provisions.[3]

According to Wade, the only difference between a jail and a state prison is the sign on the building. Wade cites numerous cases to support his position that the jail/prison distinction raised by the State is without legal significance. See, e.g., People v. James, 318 P.2d 175, 181, 155 C.A.2d 604 (1957) (sentence in county jail is incarceration in penal institution for purposes of enhanced punishment statute); Attorney General v. Sheriff of Worchester County, 413 N.E.2d 722, 724 (Sup.Jud.Ct.Mass. 1980) (county facility included within definition of correctional institution for purposes of statute requiring Department of Health inspections); State v. Tahash, 119 N.W.2d 15, 19 (Minn. 1962) (county jail is correctional facility within meaning of statute defining escape from correctional facility). Wade argues that these cases demonstrate that courts in other contexts have been unwilling to draw a distinction between jails and prisons.

Although Wade's argument is not totally without merit, we believe that for purposes of permitting a defendant to invoke Article III(a)'s provisions there is a significant distinction between jails and state prisons. The term "prison" is defined in NRS 193.0215 and "means any place designated by law for the keeping of persons held in custody under process of law, or under lawful arrest." While the definition of prison arguably includes jails, as a practical matter jails are designed only for short-term detention and punishment, not rehabilitation. *Compare* NRS 209.389 (requiring establishment of general education, vocational training and other rehabilitation programs for prisoners in

---

[3]Moreover, the State argues that there is no evidence in the record that it lodged a detainer against Wade, and that Wade failed to notify both the prosecutor's office *and* the appropriate court of his incarceration as required by Article III(a). Thus, according to the State, Wade failed to satisfy two of Article III(a)'s four conditions precedent.

The State did not raise these issues in the court below at the hearing on Wade's motion to dismiss, and, therefore, the issues are not properly before this court. This court will not consider issues raised for the first time on appeal. *See* Merica v. State, 87 Nev. 457, 488 P.2d 1161 (1971).

the Nevada State Prison) *with* NRS 211.020 (imposing no similar requirement with respect to jails).

The very programs of prisoner treatment and rehabilitation whose obstruction the IAD was intended to prevent are not present in jails. Permitting prisoners sentenced to jails to invoke the IAD's Article III(a) provisions, therefore, would be meaningless. In effect, uncertainties which obstruct nonexistent programs would be eliminated. We conclude therefore that prisoners serving jail sentences cannot avail themselves of Article III(a)'s provisions.

The Indiana Supreme Court, in Dorsey v. State, 490 N.E.2d 260 (Ind. 1986), recently arrived at a conclusion similar to that which we reach today. Dorsey, while in custody in Illinois on outstanding warrants from Michigan and Indiana, demanded timely extradition and a speedy trial under the IAD. Illinois returned Dorsey to Michigan where he was incarcerated at the Kent County Jail from June 26, 1981 until January 20, 1982. During this period Dorsey not only was awaiting trial for escape, he also was continuing to serve his original sentence. On May 3, 1982, Michigan returned Dorsey to Indiana.

Dorsey subsequently moved to dismiss the Indiana charges against him based on that state's failure to bring him to trial within Article III(a)'s 180 day limit. The trial court denied Dorsey's motion. In affirming the lower court's decision, the Indiana Supreme Court examined the purpose underlying the IAD and stated:

> The purpose of this agreement is to encourage the expeditious and orderly disposition of charges outstanding against a prisoner because outstanding charges create uncertainties which obstruct the prisoner's treatment and rehabilitation programs. The act was intended to benefit persons serving time *in prison.* Appellant was not in prison. Therefore, the purposes of this agreement were not frustrated by the trial court's finding that appellant was not entitled to invoke the provisions of this act at the time that he filed his demand for a speedy trial.

*Id.* at 264 (emphasis supplied).

## CONCLUSION

Here, the district court erred in not looking to the purpose of the IAD. Like the Indiana Supreme Court, we too believe that the IAD's purpose will not be frustrated by limiting its application to those serving prison sentences. Accordingly, we reverse the district court's order granting Wade's motion to dismiss and remand the matter for further proceedings.