799 P.2d 5

James Craig ESCALANTI, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and the Honorable Mark W. Armstrong, a Judge thereof, Respondent Judge,

and

STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, and Thomas Collins, former County Attorney, Real Parties in Interest.

No. 1 CA–SA 89–268.

Court of Appeals of Arizona, Division 1, Department B.

March 6, 1990.

Review Denied Oct. 23, 1990.

Maricopa County Public Defender by Stephen M.R. Rempe, Deputy Public Defender, Phoenix, for petitioner.

Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for real parties in interest.

## OPINION

LANKFORD, Judge.

Petitioner filed this special action seeking review of the superior court's order refusing to dismiss an indictment against him. Petitioner requested dismissal based upon a denial of a speedy trial under the provisions of the Interstate Agreement on Detainers (the Agreement). A.R.S. § 31–481.[1]

---

1. The entire text of the Agreement is set forth in A.R.S. § 31–481. Citations to the Agreement in this opinion will be to the relevant article and paragraph of the Agreement.

The question presented by this special action is whether Article III of the Agreement applies to those held in jails as well as to those in prisons. We hold that the Agreement does apply to those in jails.

The superior court's refusal to grant petitioner's motion to dismiss may not be appealed. A.R.S. § 13–4033. This court may grant special action jurisdiction when there is no other equally plain, speedy, and adequate remedy by appeal. Rule 1(a), Rules of Procedure for Special Actions.

 Special action jurisdiction is particularly appropriate when statutes or procedural rules require immediate interpretation. *See* Cameron, *Internal Operating Procedures of the Arizona Supreme Court*, 17 Ariz.L.Rev. 643, 649 (1975). In this case we accept special action jurisdiction to interpret the Agreement and provide petitioner with an effective and speedy remedy. *See Stone v. Wren*, 22 Ariz.App. 165, 525 P.2d 296 (1974); *Schultz v. Peterson*, 22 Ariz.App. 205, 526 P.2d 412 (1974).

### I.

On June 26, 1986, James Escalanti, the petitioner, was indicted for forgery and theft in Maricopa County, Arizona. Escalanti was accused of falsely altering three checks in order to defraud someone of a total of $450.00. Escalanti also allegedly committed theft by obtaining $350.00 through misrepresentation.

These charges were still pending almost three years later, when petitioner was convicted and sentenced by a California court for grand theft. Escalanti was detained in the Santa Barbara County Jail as a condition of felony probation for the theft.

On March 28, 1989, Escalanti was still in the Santa Barbara County Jail when he filed a "Demand for Jury Trial" form with the Santa Barbara County Sheriff's Office directed to the Sheriff of Maricopa County. These forms were forwarded to the Maricopa County Sheriff's Office on April 12, 1989.[2] Petitioner demanded to be brought

to trial on the pending indictment in Maricopa County within 180 days as provided in Article III of the Interstate Agreement on Detainers. The Santa Barbara County Public Defender's Office and the Maricopa County Attorney's Office also corresponded regarding petitioner's request.

The Maricopa County Attorney's Office had nearly a half of a year to bring Escalanti to trial on the pending indictment. Yet the 180–day period established by the Agreement expired without the commencement of a trial on these charges.

Article III(a) of the Agreement provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment [sic] information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint ...

When the State failed to bring petitioner to trial within the 180–day period prescribed by the Agreement, petitioner moved to dismiss the charges against him. Article V(c) of the Agreement specifically provides that dismissal of the charges with prejudice is the remedy for violations of the time provisions of the Agreement.

The State responded that the Agreement did not apply because petitioner was a prisoner in a county jail, and not a state prison, when he requested a speedy trial. The superior court denied petitioner's motion to dismiss. Petitioner requested that this court vacate the superior court's ruling and direct that the indictment against him be dismissed with prejudice.

---

**2.** The sufficiency of the form of petitioner's request was not challenged by respondent and is not at issue here.

## II.

 Article III of the Agreement ensures a speedy trial to those in a "penal or correctional institution." We believe that this language clearly included the Santa Barbara County Jail. Clear language in a statute is given its usual meaning unless impossible or absurd consequences would result. *In re Marriage of Gray,* 144 Ariz. 89, 91, 695 P.2d 1127, 1129 (1985); *Balestrieri v. Hartford Accident & Indem. Ins. Co.,* 112 Ariz. 160, 163, 540 P.2d 126, 129 (1975). A "penal institution" is a "generic term to describe all places of confinement for those convicted of crime such as jails, prisons, and houses of correction." Black's Law Dictionary 1020 (5th ed. 1979). A "correctional institution" is a "generic term describing prisons, jails, reformatories and other places of correction and detention." *Id.* at 311.

For purposes of the Agreement, as petitioner argues, the only difference between the state prison and the county jail for an incarcerated person is the sign on the building. Nothing in Article III of the Agreement expressly limits its speedy trial guarantee to prisons. Nor does any language in the Agreement deny its protection to prisoners incarcerated in county jails. Instead, the Agreement by its terms applies to all penal and correctional institutions.

In contexts other than interpreting the Interstate Agreement on Detainers, courts have found no legally significant difference between jails and prisons. *See, e.g., People v. James,* 155 Cal.App.2d 604, 612–613, 318 P.2d 175, 181 (1957) (sentence in county jail is incarceration in a penal institution for purposes of enhanced punishment statute); *Attorney General v. Sheriff of Worcester County,* 382 Mass. 57, 60, 413 N.E.2d 722, 724 (1980) (county facility included within definition of correctional institution for purposes of statute requiring Department of Health Inspections). And in numerous cases, a county jail has been considered

either a penal institution or a correctional facility for purposes of escape statutes. *Commonwealth v. Faulkner,* 8 Mass. App.Ct. 936, 937, 396 N.E.2d 1024 (1979); *State ex rel. Lange v. Tahash,* 264 Minn. 300, 306, 119 N.W.2d 15, 19 (1962); *Legg v. State,* 594 S.W.2d 429, 432 (Tex.Crim.App. 1980); *State v. Provencher,* 128 Vt. 586, 590, 270 A.2d 147, 149 (1970).

Arizona's in-state speedy trial rule protects all who are "in custody" and does not distinguish between those in jail and those in prison. Rule 8.2(b), Arizona Rules of Criminal Procedure. Those "in custody" for the purpose of this rule clearly includes those in jails as well as in prisons. Similarly, those incarcerated in a jail are in "a penal or correctional institution" for purposes of the interstate speedy trial rule.[3]

## III.

Two courts nevertheless have drawn a distinction between defendants imprisoned in county jails and those in state prisons in applying the speedy trial provisions of the Agreement. *State v. Wade,* 772 P.2d 1291 (Nev.1989), and *Dorsey v. State,* 490 N.E.2d 260 (Ind.1986), both hold that a prisoner in a county jail cannot require the receiving state to comply with Article III of the Agreement. The state urges us to follow these decisions. We decline to do so.

Instead of interpreting the plain language of the Agreement, both the *Wade* and *Dorsey* courts attempted to find what they perceived to be the underlying intent of its drafters. Those courts believed that Article I of the Agreement revealed that intent. Article I states:

> [T]he party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, pro-

---

**3.** This court has previously applied the speedy trial provision of the Agreement to a jailed prisoner. In *Rockmore v. State,* 21 Ariz.App. 388, 519 P.2d 877 (1974), appellant was incarcerated in the Los Angeles County Jail when he petitioned for a speedy trial in Pima County. Although the state did not specifically argue that the Agreement did not apply to Rockmore because he was in a county jail rather than a prison, Division II of this court did apply the speedy trial provision even though Rockmore was in jail.

duce uncertainties which obstruct programs of prisoner treatment and rehabilitation.

In *Wade*, the court found that while the definition of prison arguably includes a jail, as a practical matter Nevada jails are designed only for short term detention and punishment, not rehabilitation. 772 P.2d at 1294. In Nevada, programs of prisoner treatment and rehabilitation whose obstruction the Agreement was intended to prevent are not present in jails. *Id.* In contrast, the Nevada State Prison is statutorily required to establish general education, vocational training, and other rehabilitation programs for prisoners. Nev.Rev.Stat. § 209.389. Under Nev.Rev.Stat. § 211.020, there are no similar requirements for Nevada jails.

In *Dorsey*, the court did not examine Indiana law regarding jails and prisons. The court simply relied on the purpose of the Agreement when deciding that it was only intended to benefit persons serving time in prison. *Dorsey*, 490 N.E.2d at 264.

■ No attempt need be made to divine drafters' intent when the language of a statute or contract is unambiguous. *Jackson v. Phoenixflight Productions, Inc.*, 145 Ariz. 242, 245, 700 P.2d 1342, 1345 (1985) (where the language of the legislature is clear and leaves no opportunity for interpretation, the language must be followed); *Collins v. Stockwell*, 137 Ariz. 416, 419, 671 P.2d 394, 398 (1983) (there is no opportunity for construction or interpretation of a statute if the meaning of the statutory language is clear on its face); *Ross v. Industrial Commission*, 112 Ariz. 253, 256, 540 P.2d 1234, 1237 (1975) (where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to interpret the statute, and courts must follow the meaning of the statute as written); *Isaak v. Massachusetts Indem. Life Ins. Co.*, 127 Ariz. 581, 584, 623 P.2d 11, 14 (1981) (a clear and unambiguous contract must be interpreted according to its terms). Plain

language reveals the intended meaning and allows no room for interpretation. The clear language of the Agreement applies its speedy trial guarantee to both those in prisons and those in jails.

This court recognizes the importance of uniformity in interpreting interstate agreements.[4] A concern for comity and a desire for certainty in interpreting the Agreement make us reluctant to depart from the result reached by our sister courts.

As desirable as uniformity may be, however, it must yield where we believe that the result reached by other courts is incorrect. Moreover, we believe that an attempt to achieve uniformity based on the reasoning of *Wade* would prove to be elusive. Because both statutory law and practical reality regarding the rehabilitative functions of jails and prisons may differ from state to state, a distinction between jails and prisons may be valid in one state but not in another. Adherence to such a distinction therefore leads not to uniformity but to disparity.

Arizona's legislature, for example, has not drawn the clearcut distinction which the Nevada legislature adopted. No Arizona statute precludes localities from offering rehabilitation in their jail. In Arizona, jails may offer rehabilitative programs. Prisoners may be transferred from a state prison to a jail and can participate in programs of the jail "including work furlough *rehabilitation* programs." A.R.S. § 31–234(C) (emphasis added). The sheriff may also employ jail prisoners at hard labor. A.R.S. § 31–141(C). A jail prisoner is allowed double time while employed as a trusty working on public streets, highways, or other public works. A.R.S. § 31–144. Because such labor reduces the total jail term, it is presumably rehabilitative.

On the other hand, Arizona's Department of Corrections is not compelled by statutory law to provide rehabilitation to prisoners. The Department of Corrections "*may* institute and pursue programs which promote the rehabilitation of the prisoners" in

---

4. Forty-nine states and the United States have adopted the Agreement. *See* Unif. Mandatory Disposition of Detainers Act (note on Interstate Agreement on Detainers), 11 U.L.A. 321 (Supp. 1989).

its charge, A.R.S. § 31–201.01(C) (emphasis added), but is not explicitly commanded to do so.[5]

In short, the inmates of Arizona jails and prisons cannot be treated differently based on a distinction between the rehabilitative functions of the two types of institutions. Rehabilitative programs may or may not exist in either type of institution.

In California, as in Arizona, the distinction between the rehabilitative functions of jails and prisons is ephemeral at best. The California Board of Corrections is required to establish minimum standards for jails, including minimum standards for rehabilitation programs. Cal.Penal Code § 6030(a) & (b) (West 1989). In addition, the board of supervisors in a county can provide for work furlough programs and education in county jail facilities if such programs are found to be feasible. Cal.Penal Code § 1208(a) (West 1989). Education is defined as including "rehabilitative counseling." Cal.Penal Code § 1208(i) (West 1989).

California thus provides for rehabilitative programs in jails. While we have not exhaustively searched the laws of other states adhering to the Agreement, the fact that both of the states involved here have laws which negate any distinction between jails and prisons suggests not only that no such distinction can be drawn in this case, but that such a distinction should not be drawn in any case. An interstate agreement cannot be uniformly applied when its application rests on an individual state's law or practice and that state has taken a different course than some of her sister states.

We hold that the trial court should have applied the time provisions of Article III of the Agreement. Therefore, we reverse the superior court's order denying Escalanti's

motion to dismiss and direct the court to dismiss the indictment with prejudice.

GRANT, C.J., and JACOBSON, J., concur.

**5.** The Arizona Department of Corrections can also transfer prisoners to a local jail, if the locality agrees and the department pays for the costs. A.R.S. § 31–234(A) (Supp.1989). Thus, even if it were true that Arizona jails offer no rehabilitation whatsoever, and prisoners were rehabilitated, the capacity to transfer an inmate from a rehabilitative facility to a non-rehabilitative one prevents making any fair and consistent distinction between jails and prisons. Today's decision avoids a potential equal protection problem of disparate treatment of jail inmates and prison inmates.