317 P.3d 630

STATE of Arizona, Petitioner,

v.

The Honorable Jerry BERNSTEIN, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Commissioner,

Doreen Lynn Herman; Ramsey Tohannie; Armen Aslayan; Keith Porter; Mara Hall; Shyla Rotmil; Robert R. Farinas; Kymberly Crowley; Jason Quan; Michael Dinola; Kelly Lewis Day, Real Parties in Interest.

No. 1 CA–SA 13–0285.

Court of Appeals of Arizona, Division 1.

Jan. 14, 2014.

As Amended Feb. 6, 2014.

Maricopa County Attorney's Office By Lisa Marie Martin, Phoenix, for Petitioner.

W. Clifford Girard Jr., Attorney at Law By W. Clifford Girard Jr., for Real Parties in Interest.

Scottsdale City Prosecutor's Office By Kenneth M. Flint, Scottsdale, for Amicus Curiae City of Scottsdale.

Law Offices of Michael J. Dew By Michael J. Dew, for Amicus Curiae Phoenix Public Defender Office.

Judge SAMUEL A. THUMMA delivered the opinion of the Court, in which Presiding Judge RANDALL M. HOWE and Judge PATRICIA A. OROZCO joined.

## OPINION

THUMMA, Judge.

¶ 1 Real parties in interest are defendants facing aggravated driving under the influence (DUI) charges for violating Arizona Revised Statutes (A.R.S.) section 28–1383 (2014)[1] in Maricopa County Superior Court. On the dates of the alleged offenses, law enforcement officers drew two vials of blood from

---

1. Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

each Defendant. The Scottsdale Crime Laboratory (SCL) then tested blood from one of those vials with the following results:

| Defendant | Date of Alleged Offense | Date of SCL Testing | SCL Blood Alcohol Content Test Results |
|---|---|---|---|
| Tohannie | 11/28/2009 | 12/2/2009 | 0.203 |
| Herman | 3/2/2010 | | |
| • First Test | 3/10/2010 | | 0.192 |
| • Second Test | | 8/24/2011 | 0.180 |
| Rotmil | 7/31/2010 | 8/3/2010 | 0.143 |
| Porter | 9/13/2010 | 9/21/2010 | 0.217 |
| Hall | 3/29/2011 | 3/29/2011 | 0.199 |
| Farinas | 7/3/2011 | 8/4/2011 | 0.245 |
| Quan | 11/5/2011 | 11/11/2011 | 0.224 |
| Aslanyan | 11/27/2011 | 11/30/2011 | 0.183 |
| Crowley | 11/29/2011 | 12/6/2011 | 0.197 |
| Dinola | 11/28/2009 | 12/21/2011 | 0.248 |
| Day | 2/4/2012 | 2/8/2012 | 0.318 |

For each Defendant, these blood alcohol content (BAC) test results far exceed the 0.08 threshold for DUI and, except for Defendant Rotmil, exceed the 0.15 threshold for extreme DUI. *See* A.R.S. §§ 28–1381(A)(2), – 1382(A)(1). Although the second vial of blood is available for independent testing by Defendants, the record does not contain any independent test results conducted by any of the Defendants.

¶ 2 To test the blood, the SCL used a Clarus 500 gas chromatograph serial number 650N9042003 manufactured by PerkinElmer (the 2003 Instrument), an autosampler, a personal computer and a printer. Stated simply, after calibration, several dozen vials are placed in the carousel of the 2003 Instrument. The vials contain blood samples (each individual has two samples tested at a time, with the second sample called a replicate) along with control samples. The vials are sampled, one by one, and analyzed by the 2003 Instrument, a process that takes several hours. The data are then processed (creating graphs showing the chemical properties of the compounds tested for called chromatograms) and results are calculated and printed. The output is checked for consistency with expected results, control samples and quality controls, and replicates are checked to make sure that results are within plus or minus five percent of each other according to SCL protocol. A second analyst then performs a technical review, which is followed by an administrative review.

¶ 3 The 2003 Instrument was put in service in August 2009 and, since that time, has analyzed approximately 21,000 samples. Defendants allege the 2003 Instrument has several unresolved flaws. These allegations have resulted in substantial motion practice in the Superior Court as well as a prior special action by the State in which this court accepted jurisdiction and granted relief[2] and now this special action by the State. As relevant here, Defendants moved to preclude the State from introducing into evidence at trial the SCL BAC test results, claiming the results were inadmissible under Arizona Rule of Evidence 702.[3]

---

**2.** *State ex rel. Montgomery v. Superior Court*, CA–SA 12–0226 (Nov. 6, 2012) (decision order accepting special action jurisdiction, granting relief and vacating order requiring disclosure of 2011 subject testing data). Additional motion practice before the Superior Court has included claims the State violated disclosure and discovery obligations and related requests for sanctions, issues that are not part of this special action.

**3.** Although Defendants' motions had various titles, the relief requested was a pretrial ruling that the SCL BAC test results were inadmissible under Arizona Rule of Evidence 702. *See State v. Superior Court*, 108 Ariz. 396, 397, 499 P.2d 152, 153 (1972) ("The primary purpose of a motion in limine is to avoid disclosing to the jury prejudicial matters which may compel a mistrial. It

¶ 4 At Defendants' request, the Superior Court held evidentiary hearings lasting parts of 17 days. After considering testimony, exhibits and related argument, the Superior Court issued a lengthy, detailed Minute Entry dated August 21, 2013 (and clarified on November 11, 2013). The Minute Entry first found that the State had shown by a preponderance of the evidence that the SCL BAC test results complied with Ariz. R. Evid. 702(a), (b) and (c). The Minute Entry then found the State had failed to show that "the expert has reliably applied the principles and methods to the facts of the case" as required by Ariz. R. Evid. 702(d). More specifically, the Minute Entry states that "the principles and in particular, the methods [of the SCL BAC testing] were not properly applied." Accordingly, the Minute Entry found "the blood tests and results as to each" Defendant were not admissible.

¶ 5 The State filed this special action seeking relief from the Minute Entry and, at the State's request, this court stayed the cases pending resolution of this special action. The court has considered the parties' briefs and appendices, the amicus briefs and oral argument. Accepting jurisdiction and finding that, under the legal standard discussed below, the SCL BAC test results are admissible under Arizona Rule of Evidence 702, the court grants the State's request for relief, vacates the Minute Entry finding the SCL BAC test results were not admissible under Arizona Rule of Evidence 702, vacates the stay entered pending resolution of this special action and remands these cases for further proceedings.

## ANALYSIS

### I. Special Action Jurisdiction.

¶ 6 The court has "discretion to accept special action jurisdiction, and will

accept jurisdiction if a petitioner does not have an 'equally plain, speedy, and adequate remedy by appeal,' or 'if a case presents an issue of first impression and one of statewide importance that is likely to recur.'" *Ariz. Dep't of Econ. Sec. v. Superior Court (Angie P.),* 232 Ariz. 576, 579, ¶ 4, 307 P.3d 1003, 1006 (App.2013) (citations omitted); *see also* Ariz. R.P. Spec. Act. 1(a). "Special action jurisdiction is particularly appropriate when statutes or procedural rules require immediate interpretation," *Escalanti v. Superior Court,* 165 Ariz. 385, 386, 799 P.2d 5, 6 (App.1990), and for petitions "present[ing] a purely legal issue of first impression that is of statewide importance," *State ex rel. Thomas v. Duncan,* 216 Ariz. 260, 262, ¶ 5, 165 P.3d 238, 240 (App.2007) (citation omitted).

¶ 7 The parties agree that the State has no immediate right to appeal. *See generally State v. Bejarano,* 219 Ariz. 518, 200 P.3d 1015 (App.2008) (discussing cases). In arguing this court should decline special action jurisdiction, Defendants claim that the Superior Court found the SCL BAC test results were inadmissible based on issues of witness credibility. Specifically, Defendants argue that the Minute Entry is based on issues "of fact and credibility—not mistaken legal interpretation" and that the factual findings relied on by the Superior Court "are limited to the credibility of a few members of one crime lab."

¶ 8 Defendants cite no authority for the proposition that the Superior Court should or properly could exclude evidence under Arizona Rule of Evidence 702 based on witness credibility, as opposed to evidentiary reliability or scientific validity.[4] Indeed, the Arizona Supreme Court stated decades ago

should not, except upon a clear showing of non-admissibility, be used to reject evidence.").

**4.** Defendants cite *Miller v. Pfizer, Inc.,* 356 F.3d 1326 (10th Cir.2004) for the proposition that "a trial court does not abuse its discretion by making credibility determinations" in deciding admissibility under Arizona Rule of Evidence 702. *Miller,* however, does not support this proposition. Instead, *Miller* commended the trial court for *not* exceeding the proper scope of the inquiry "by, for example, considering [the expert's] credibility or weighing the evidence." 356 F.3d at

1335 (citing *Ambrosini v. Labarraque,* 101 F.3d 129, 141 (D.C.Cir.1996) ("By attempting to evaluate the credibility of opposing experts and the persuasiveness of competing scientific studies, the district court conflated the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony by a fact finder.") and *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1045 (2d Cir.1995) (noting "evaluating witness credibility and weight of the evidence" is "the ageless role of the jury")).

that "[n]o rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury." *State v. Clemons,* 110 Ariz. 555, 556–57, 521 P.2d 987, 988–89 (1974); *see also State v. Lehr,* 201 Ariz. 509, 517, ¶ 29, 38 P.3d 1172, 1180 (2002) (" 'Admissibility is for determination by the judge unassisted by the jury. Credibility and weight are for determination by the jury unassisted by the judge' ") (quoting *State v. Sanchez,* 328 N.C. 247, 400 S.E.2d 421, 424 (1991)); *Logerquist v. McVey,* 196 Ariz. 470, 499, ¶ 104, 1 P.3d 113, 142 (2000) (McGregor, J., dissenting) (noting inquiry "focuses not on the credibility of a witness, but upon the scientific validity of the proffered evidence") (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)); Ariz. R. Evid. 702 cmt. to 2012 amend, (noting amendments to Arizona Rule of Evidence 702 discussed below are "not intended to supplant traditional jury determinations of credibility"). In this case, however, the issue need not be resolved because the Minute Entry expressly disavowed reliance on any witness credibility assessment. Accordingly, the record factually does not support Defendants' argument that the SCL BAC test results were deemed inadmissible based on witness credibility or that the special action challenging that ruling turns on witness credibility.

¶ 9 Fairly read, the Petition seeks legal interpretation regarding Arizona Rule of Evidence 702, which is a purely legal issue of statewide importance. *See State ex rel. Thomas,* 216 Ariz. at 262, ¶ 5, 165 P.3d at 240; *Escalanti,* 165 Ariz. at 386, 799 P.2d at 6. Accordingly, and because the State has no equally plain, speedy or adequate remedy by appeal, in exercising its discretion, the court accepts special action jurisdiction. *See* Ariz. R.P. Spec. Act. 1(a).

## II. The Merits Of The Petition.

¶ 10 This court "review[s] de novo matters involving interpretation of court rules," *State v. Fitzgerald,* 232 Ariz. 208, 210, ¶ 10, 303 P.3d 519, 521 (2013), and a fact-based "decision to permit or exclude expert testimony for an abuse of discretion," *McMurtry v. Weatherford Hotel, Inc.,* 231 Ariz. 244, 249, ¶ 10, 293 P.3d 520, 525 (App. 2013). The State, as the proponent of the evidence, has the burden to show by a preponderance of the evidence that the SCL BAC test results are admissible. *See, e.g.,* Fed.R.Evid. 702 advisory committee's notes to 2000 amend, (citing *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

## A. Arizona Rule Of Evidence 702.

¶ 11 The admissibility of the SCL BAC test results implicates significant recent changes to Arizona Rule of Evidence 702. Effective January 1, 2012, Arizona Rule of Evidence 702 was amended to conform to Federal Rule of Evidence 702 and now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In making these changes, the Arizona Supreme Court set forth the following detailed comment:

> The 2012 amendment of Rule 702 adopts Federal Rule of Evidence 702, as restyled. The amendment recognizes that trial courts should serve as gatekeepers in assuring that proposed expert testimony is reliable and thus helpful to the jury's determination of facts at issue. The amendment is not intended to supplant traditional jury determinations of credibility and the weight to be afforded otherwise admissible testimony, nor is the amendment intended to permit a challenge to the testimony of every expert,

preclude the testimony of experience-based experts, or prohibit testimony based on competing methodologies within a field of expertise. The trial court's gatekeeping function is not intended to replace the adversary system. Cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

A trial court's ruling finding an expert's testimony reliable does not necessarily mean that contradictory expert testimony is not reliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise. Where there is contradictory, but reliable, expert testimony, it is the province of the jury to determine the weight and credibility of the testimony.

This comment has been derived, in part, from the Committee Notes on Rules—2000 Amendment to Federal Rule of Evidence 702.

Ariz. R. Evid. 702 cmt. to 2012 amend. To date, no Arizona Supreme Court case has construed these amendments to Arizona Rule of Evidence 702 and only a few Arizona Court of Appeals decisions have done so, none of which address BAC test results.[5] Because the rules are now textually identical, "federal court decisions interpreting [Federal Rule of Evidence 702] are persuasive but not binding" in interpreting Arizona Rule of Evidence 702. *Ariz. State Hosp. v. Klein,* 231 Ariz. 467, 473, ¶ 26, 296 P.3d 1003, 1009 (App.2013). Similarly, advisory committee notes to Federal Rule of Evidence 702 provide guidance in interpreting Arizona Rule of Evidence 702. *See State v. Salazar-Merca-*

*do,* 232 Ariz. 256, 260, ¶ 11, 304 P.3d 543, 547 (App.2013).

 ¶ 12 In addition to the text of Arizona Rule of Evidence 702, Arizona courts have noted the United States Supreme Court in *Daubert* set forth several "non-exclusive factors for determining whether scientific evidence is admissible," including:

- "whether the scientific methodology has been tested;"
- whether the methodology has been "subjected to peer review;"
- "the 'known or potential rate of error;'"
- "whether the methodology has 'general acceptance;'" and
- "the existence and maintenance of standards controlling the technique's operation."

*Klein,* 231 Ariz. at 473, ¶ 27, 296 P.3d at 1009 (citing *Daubert* for first four factors); *State v. Bible,* 175 Ariz. 549, 586 n. 32, 858 P.2d 1152, 1189 n. 32 (1993) (quoting *Daubert* for last factor); *see also* Fed.R.Evid. 702 advisory committee's notes to 2000 amend, (listing "other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact."). Each factor " 'may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.' " *Klein,* 231 Ariz. at 473, ¶ 28, 296 P.3d at 1009 (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

¶ 13 The United States Supreme Court's decision in *Daubert* resulted in amendments to Federal Rule of Evidence 702 that made "[n]o attempt ... to 'codify' these specific factors." Fed.R.Evid. 702 advisory committee's notes to 2000 amend, (also noting amendments to Fed.R.Evid. 702 were "broad enough to require consideration of any or all

**5.** *See State v. Buccheri-Bianca,* 233 Ariz. 324, 312 P.3d 123 (App.2013) (affirming admission of generalized expert testimony, sometimes called "cold expert" testimony, under Ariz. R. Evid. 702); *State v. Perez,* 233 Ariz. 38, 308 P.3d 1189 (App.2013) (affirming exclusion of polygraph test results under Ariz. R. Evid. 702); *State v. Salazar-Mercado,* 232 Ariz. 256, 304 P.3d 543 (App. 2013) (affirming admission of generalized expert testimony under Ariz. R. Evid. 702); *State v. Delgado,* 232 Ariz. 182, 303 P.3d 76 (App.2013)

(affirming admission of "strangulation expert" testimony under Ariz. R. Evid. 702); *see also Ariz. State Hosp. v. Klein,* 231 Ariz. 467, 474, ¶ 33, 296 P.3d 1003, 1010 (App.2013) (finding Ariz. R. Evid. 702 "applies to expert testimony offered in a discharge hearing pursuant to A.R.S. § 36–3714"); *McMurtry,* 231 Ariz. at 251, ¶ 17, 293 P.3d at 527 (noting testimony of hospitality industry expert admissible under Ariz. R. Evid. 702, both before and after January 1, 2012 amendments).

of the ... factors where appropriate"). The 2012 amendments to the Arizona Rules of Evidence adopted the text of Federal Rule of Evidence 702, meaning Arizona Rule of Evidence 702 similarly does not codify the *Daubert* factors. Moreover, the court in *Klein* was not asked to address the interaction between the text of Arizona Rule of Evidence 702 and the *Daubert* factors. *See Klein,* 231 Ariz. at 473, ¶ 27, 296 P.3d at 1009. Fairly read, however, the *Daubert* factors focus on general principles and methods, an inquiry addressed in Ariz. R. Evid. 702(c). Accordingly, the *Daubert* factors are discussed in the context of Ariz. R. Evid. 702(c). *Accord* 4 *Weinstein's Federal Evidence* § 702.05[2][c] at 702–93–103 (2d ed.2013) (citing cases using similar approach in construing Fed.R.Evid. 702(c)); *see also id.* § 702.04 at 702–51–80 (listing factors relevant to Fed. R.Evid. 702(a) inquiry) (citing cases); *id.* § 702.05[2][b] at 702–91–92 (listing factors relevant to Fed.R.Evid. 702(b) inquiry) (citing cases); *id.* § 702.05[2][d] at 702–104–110 (listing factors relevant to Fed.R.Evid. 702(d) inquiry) (citing cases). With this background, the court addresses the Arizona Rule of Evidence 702 analysis applicable to the SCL BAC test results for Defendants.

### B. Application Of Arizona Rule Of Evidence 702.

#### a. The SCL BAC Test Results Comply With Ariz. R. Evid. 702(a).

¶ 14 A proponent of expert testimony must show by a preponderance of the evidence that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a). The Superior Court found the State showed by a preponderance of the evidence that "the criminalist's scientific and technical knowledge [regarding the SCL BAC test results] is relevant and would assist the trier of fact in understanding the evidence," as required by Ariz. R. Evid. 702(a). The record fully supports this finding.

#### b. The SCL BAC Test Results Comply With Ariz. R. Evid. 702(b).

¶ 15 The proponent of expert testimony must show by a preponderance of the evidence that "the testimony is based upon sufficient facts or data." Ariz. R. Evid. 702(b). The Superior Court found the State showed by a preponderance of the evidence that the SCL BAC test results are "based on sufficient facts or data." Again, the record fully supports this finding.

#### c. The SCL BAC Test Results Comply With Ariz. R. Evid. 702(c).

¶ 16 The proponent of expert testimony must show by a preponderance of the evidence that "the testimony is the product of reliable principles and methods." Ariz. R. Evid. 702(c). The Superior Court found the State showed by a preponderance of the evidence that the SCL BAC test results are "based on reliable principles and methods." The record fully supports this finding as well.

¶ 17 Applying the non-exclusive *Daubert* factors, the parties stipulated and the Superior Court found that gas chromatography (the SLC BAC testing method) "is accepted within the scientific community." This stipulation indicates that the SCL BAC test results meet at least three of the factors listed in *Daubert. See Klein,* 231 Ariz. at 473, ¶ 27, 296 P.3d at 1009 ("whether the scientific methodology has been tested;" whether the methodology has been "subjected to peer review;" and "whether the methodology has 'general acceptance' ").[6] The Superior Court also found that the SCL has policies and procedures consistent with, and that supplement, the international standards discussed below, indicating the SCL BAC test results met another *Daubert* factor. *See Bible,* 175 Ariz. at 586 n. 32, 858 P.2d at 1189 n. 32 ("[T]he existence and maintenance of standards controlling the technique's operation.").

¶ 18 The remaining *Daubert* factor—"the 'known or potential rate of error' "—bears

6. To the extent the SCL BAC test results might constitute novel scientific evidence, this stipulation indicates the blood test results would have been admissible (with a proper evidentiary foundation) under Arizona Rule of Evidence 702 as it existed prior to January 1, 2012. *See, e.g., Bible,* 175 Ariz. at 586, 858 P.2d at 1183 (citing authority).

special mention. *Klein,* 231 Ariz. at 473, ¶ 27, 296 P.3d at 1009. As discussed more fully below, the Superior Court found no suggestion that any claimed issue with performance of the 2003 Instrument resulted in any inaccuracy, let alone a false positive, for any of the SCL BAC test results for Defendants' blood. Similarly, with one possible exception discussed more fully below, the Superior Court was "not persuaded" that any SCL BAC testing for any named Defendant was done improperly. These findings, which are fully supported by the record, indicate the SCL BAC test results met this fifth *Daubert* factor.

#### d. The SCL BAC Test Results Comply With Ariz. R. Evid. 702(d).

¶ 19 The proponent of expert testimony must show by a preponderance of the evidence that "the expert has reliably applied the principles and methods to the facts of the case." Ariz. R. Evid. 702(d). The State argues that Defendants' failure to independently test their blood samples supports the admissibility of the SCL BAC test results under Ariz. R. Evid. 702(d). As the proponent of the evidence, however, the State has the burden to show admissibility by a preponderance of the evidence. It is true that, if independent testing had been performed, the results of such testing (if consistent with, or significantly inconsistent with, the SCL BAC test results) might have been relevant in determining the admissibility of the SCL BAC test results. It is also true that the lack of independent testing may be relevant in other contexts. *See State v. Fields,* 196 Ariz. 580, 583, ¶ 9, 2 P.3d 670, 673 (App.1999) (in accepting special action jurisdiction and vacating discovery order, noting defendants had not conducted "independent testing of the blood samples each was apparently offered or provided, although this would be the best evidence of the only material issue, the accuracy of the reported BACs"); *State ex rel. Montgomery,* 1 CA–SA 12–0226, at 10 (same; quoting *Fields*). In determining whether the SCL BAC test results are admissible under Ariz. R. Evid. 702(d), however, such lack of independent testing is not relevant in determining whether the State met its burden to show admissibility.

¶ 20 The Minute Entry broadly framed the inquiry as "whether the methods or actions by the [SCL] in its daily operations are sufficiently reliable to comply with [Ariz. R. Evid.] 702(d)." In finding the SCL BAC test results inadmissible, the Minute Entry states "that the principles and in particular, the methods were not properly applied, as required" by Ariz. R. Evid. 702(d). In doing so, however, the Minute Entry focused on issues with the 2003 Instrument that (1) resulted in a failure to produce any usable test results (as opposed to test results that over-inflated BAC levels or that yielded false positives) or (2) were unrelated to the accuracy of the SCL BAC testing of Defendants' blood.[7]

¶ 21 As applied, the focus of Ariz. R. Evid. 702(d) is the admissibility of the specific SCL BAC test results that the State offered for a specific Defendant in a specific case. Thus, the inquiry is whether those specific SCL BAC test results are the product of reliable application of principles and methods. Given this narrow inquiry, it is particularly significant that the Superior Court found no evidence that any of Defendants' SCL BAC test results were inaccurate or incorrect. Indeed, after 17 days of evidentiary hearing, the Superior Court succinctly found:

> No testimony has shown that any of the consolidated [D]efendants' tests were inaccurate. The State, in fact, presented evidence to the contrary. With one possible exception, the Court is not persuaded that any of the named [D]efendants' tests were done improperly.[8]

---

**7.** The Superior Court properly noted that several of Defendants' objections go to the weight of the evidence, not admissibility, including controls and calibrations of the 2003 Instrument; validation of SCL BAC test results by a second criminalist and sample integrity and shelf-life. The Superior Court also properly noted that, for these issues, Defendants would be able to cross-examine the State's witnesses and present controverting evidence at trial.

**8.** This possible exception is the March 2010 SCL BAC testing for Defendant Herman, whose blood

These findings, which are fully supported by the record, strongly indicate that the SCL BAC test results for Defendants are admissible under Ariz. R. Evid. 702(d).

¶ 22 The record shows that the 2003 Instrument occasionally failed to produce usable BAC test results and that the 2003 instrument was not taken out of service to resolve those issues. There was no showing, however, that such failures to provide test results meant that usable BAC test results produced by the 2003 Instrument were not reliable. Although inconvenient, when no usable BAC test results were produced, no data of any type was provided. In that case, there was no output to analyze and there could be no overinflated BAC levels, false positives or other test results the reliability of which could be analyzed, let alone questioned. As the Superior Court correctly noted, just because the 2003 Instrument might be "non-conforming doesn't necessarily mean the results are inaccurate." As in the prior special action, it remains the case that there is no showing how testing that produces no results renders SCL "BAC test results less reliable.... '[N]one of the anomalies alleged has been shown to impair the reliability of the test [results].'" *State ex rel. Montgomery*, 1 CA–SA 12–0226, at 8 (citation omitted).

¶ 23 Other objections by Defendants involve issues with data or testing unrelated to SCL BAC testing of Defendants' blood. The SCL identified and documented issues regarding such unrelated testing and took corrective action (including rerunning tests) as indicated by SCL protocol. More importantly, these issues do not involve Defendants' blood, there is no suggestion that these issues had any impact on the testing of Defendants' blood and, as noted previously, the Superior Court found no evidence indicating that any of Defendants' SCL BAC test results were inaccurate or incorrect. *See, e.g., Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir.2009) ("Admissibility under [Fed.R.Evid.]

was retested more than a year later as discussed

702 does not require perfect methodology."); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.2002) ("[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of [the] methodology.") (citation omitted).

¶ 24 Defendants argue that the SCL was not in compliance with International Organization for Standardization/International Electrotechnical Commission (ISO/IEC) specification 17025:2005. ISO/IEC 17025:2005 is "an international standard ... that specifies the general requirements for the competence to carry out tests and/or calibrations. These requirements have been used by accrediting agencies to determine what a laboratory must do to secure accreditation." 2 Edward F. Fitzgerald, *Intoxication Test Evidence* § 57:2 (2d ed.2013). On June 2, 2011, the SCL was certified by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board International (ASCLD/LAB–International), meaning the SCL was "found to meet the requirements of ISO/IEC 17025:2005." This certification required compliance with ISO/IEC 17025:2005 for six months before issuance, meaning that the SCL would have been in compliance with these standards by December 2010. *See* 2 Edward F. Fitzgerald, *Intoxication Test Evidence* § 57:18 (2d ed.2013) (noting ASCLD/LAB "must confirm that a laboratory has in fact been ISO[/IEC] 17025[:2005]-compliant for the six-month period preceding the ultimate accreditation inspection of the laboratory"). Although Defendants' experts suggested the SCL was not ISO/IEC 17025:2005 compliant, the Superior Court made plain that it was "not relying on the opinions of the defense experts." Moreover, the Superior Court found that the SCL BAC test results met the standard of admissibility under Ariz. R. Evid. 702(c) ("the testimony is the product of reliable principles and methods"), the inquiry that would most directly address ISO/IEC 17025:2005 compliance. Apart from these findings, Defendants cite no case where test results were found inadmissible based on ISO/IEC 17025:2005 compliance concerns (let alone, when testing was done by an ASCLD/LAB–International

below.

certified, ISO/IEC 17025:2005 compliant laboratory).

¶ 25 Defendants point to three issues with SCL BAC testing on days when a Defendant's blood was tested prior to December 2010 (when the SCL would have been ASCLD/LAB–International, ISO/IEC 17025:2005 compliant). During December 2009 testing of Defendant Tohannie's blood (showing a BAC of 0.203) and March 2010 testing of Defendant Herman's blood (showing a BAC of 0.192), the 2003 Instrument failed to provide test results for some vials from other individuals. Nothing suggests that this lack of data had any impact on the testing of Defendant Tohannie's or Defendant Herman's blood, which did yield test results. In fact, retesting of Defendant Herman's blood in August 2011 revealed a BAC of 0.180, a result consistent with the March 2010 0.192 BAC result, given that alcohol in blood samples naturally degrades over time. September 2010 testing of Defendant Porter's blood showed a 0.217 BAC. During the same test run, 4 of the 35 or so sample pairs had results where the primary and replicate samples differed by more than the five percent SCL standard. Defendant Porter's test results (0.217 BAC and 0.225 BAC), however, had no such disparity. Consistent with protocol, the SCL reported the lower of the two levels in the BAC test results for Defendant Porter. Nothing suggests that any issue with the other samples had any impact on the testing of Defendant Porter's blood.

¶ 26 Finally, the Minute Entry expresses concern that individuals outside the SCL, including defense counsel, were the first to notice some of the issues regarding the 2003 Instrument raised at the evidentiary hearing. Although Defendants point to email exchanges, including some dated after the conclusion of the evidentiary hearing, those exchanges do not involve any SCL BAC testing for any Defendant. To the extent those exchanges can be characterized as questions by SCL personnel about their confidence in the 2003 Instrument, "[e]xpert witnesses need not be subjectively certain or totally convinced about their opinions or other testimony for the testimony to be admissible." 4 *Weinstein's Federal Evidence*

§ 702.05[2][d] at 702–110 (2d ed.2013) (citing *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786); *see also Daubert*, 509 U.S. at 590, 113 S.Ct. 2786 ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science."). Moreover, even with knowledge of these exchanges, the Superior Court found nothing to suggest the SCL BAC test results of Defendants' blood "were inaccurate" or "were done improperly."

* * * * * *

¶ 27 The applicable admissibility standard is whether the State demonstrated by a preponderance of the evidence that "the expert has reliably applied the principles and methods to the facts of the case." Ariz. R. Evid. 702(d). There are many, at times irreconcilable cases construing Fed.R.Evid. 702(d), and the Arizona Supreme Court will provide final direction regarding which of those cases properly provides guidance in interpreting Arizona's rule. For now, it is sufficient to note that the inquiry into reliability focuses on whether the evidence is "derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. As the United States Supreme Court elaborated:

> [S]cientists typically distinguish between "validity" (does the principle support what it purports to show?) and "reliability" (does application of the principle produce consistent results?). Although "the difference between accuracy, validity, and reliability may be such that each is distinct from the other by no more than a hen's kick," our reference here is to *evidentiary* reliability—that is, trustworthiness. In a case involving scientific evidence, *evidentiary reliability* will be based upon *scientific validity*.

*Daubert*, 509 U.S. at 590 n. 9, 113 S.Ct. 2786 (citations omitted). Applying these principles, the State has shown by a preponderance of the evidence that the SCL BAC test

results for Defendants are scientifically valid. Similarly, the Superior Court found nothing to suggest that the SCL BAC test results for Defendants were inaccurate, noted evidence to the contrary and was not persuaded that any of Defendants' tests were done improperly. *See also* Fed.R.Evid. 702 advisory committee's notes to 2000 amend. ("'The evidentiary requirement of reliability is lower than the merits standard of correctness.'") (citation omitted). On this record, and viewed through the correct legal lens, the State has shown by a preponderance of the evidence that the SCL BAC test results for Defendants are admissible under Arizona Rule of Evidence 702. Accordingly, the Minute Entry erred in concluding the SCL BAC test results for Defendants were inadmissible.

¶ 28 In reaching this conclusion, the court notes the Superior Court's concerns about a lengthy "battle of the experts" at trial if the SCL BAC test results were found admissible. At trial, each Defendant will be able to cross-examine and present evidence about claimed deficiencies in the specific SCL BAC test results at issue. Such presentations may lengthen these trials. However, reliance on the adversarial system at a trial—not the per se exclusion of evidence admissible under Arizona Rule of Evidence 702—is what the Arizona Supreme Court appeared to contemplate in directing that "[c]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Ariz. R. Evid. 702 cmt. to 2012 amend.

## CONCLUSION

¶ 29 The court accepts special action jurisdiction. Concluding that under the legal standard discussed above, the SCL BAC test results are admissible under Arizona Rule of Evidence 702, the court grants the State's request for relief, vacates the Minute Entry finding that the SCL BAC test results were not admissible under Arizona Rule of Evidence 702, vacates the stay entered pending resolution of this special action and remands these matters for further proceedings.