NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEFFREY MATHEW ACKERMAN, *Appellant.*

No. 1 CA-CR 16-0825
FILED 8-23-2018

Appeal from the Superior Court in Maricopa County
No.  CR2014-002717-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

Jeffrey Mathew Ackerman, Florence
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

---

**J O H N S E N**, Judge:

**¶1**          Jeffrey Mathew Ackerman timely filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his convictions of aggravated assault, a Class 6 felony; attempted sexual conduct with a minor, a Class 3 felony; sexual abuse, a Class 3 felony; and four counts of sexual conduct with a minor, each a Class 2 felony. All of the crimes involved a victim under the age of 15. Ackerman's counsel has searched the record on appeal and found no arguable question of law that is not frivolous. *See Smith v. Robbins*, 528 U.S. 259 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530 (App. 1999). Counsel now asks this court to search the record for fundamental error.

**¶2**          Ackerman filed a *pro per* supplemental brief identifying several issues and later filed a *pro per* "Enlargement of Supplemental Brief" expanding further on issues Ackerman contends require reversal of his conviction.[1] After reviewing the entire record and considering the issues Ackerman raises, we affirm Ackerman's convictions and sentences.

**FACTS AND PROCEDURAL BACKGROUND**

**¶3**          On October 19, 2011, a 14-year-old girl became unhappy that her grandmother was restricting her use of the home phone and snuck out to try to make some phone calls after her grandmother went to bed.[2] The girl met an older girl at a nearby park, and the two girls walked together to an apartment, where they met three men: Ackerman, Ackerman's roommate, and a third unidentified man. One of the men allowed the 14-year-old girl to use a cell phone, and she was able to call a friend but was

---

[1]          We hereby grant leave for Ackerman to file his "enlarged" supplemental brief.

[2]          Upon review, we view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Ackerman. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

unable to arrange for someone to pick her up. Ackerman gave her a drink in a cup. When she finished that drink, she was given another even though she told the men she did not want it. The unidentified man and older girl then left the apartment.

¶4 After drinking the second drink, the girl became intoxicated. She told Ackerman and his roommate that she wanted to call her friend again, but the men refused. They began to shove the girl around, announced to her that they were "sharing tonight," then pushed her onto a mattress and together pulled off all her clothes and performed various sexual acts on her, despite her protests and resistance. Ackerman's roommate muffled the girl's cries by putting his hand over her mouth and told her not to scream.

¶5 After being assaulted on the mattress, the girl put her clothes back on but could not find her shirt, so she donned a shirt one of the men handed her. Later, Ackerman performed six additional acts on the still-intoxicated girl while she was sitting on a couch.

¶6 Early the next morning, the girl left the apartment for home, and her grandmother picked her up in a car along the way. The grandmother noticed that the girl was barefoot, was wearing an unfamiliar shirt and had a bruise on her neck. At first, the girl did not tell her grandmother what had happened, but she later confided in her aunt, who told the girl to tell the grandmother about it. On October 24, the girl told her grandmother, who contacted police that same day.

¶7 The girl told police and medical staff about the assaults and described tattoos on the men's bodies, including a swastika tattoo just above the base of Ackerman's penis. The girl had not bathed or showered since the events in Ackerman's apartment. A forensic nurse performed a medical exam and collected samples from various places on the girl's body. A known DNA sample from Ackerman matched samples taken from the victim's neck, breast, external genitals and around her mouth.

¶8 Ackerman's first trial resulted in a mistrial. A grand jury then re-indicted him on charges of kidnapping, aggravated assault, attempted sexual conduct with a minor, sexual abuse and four counts of sexual conduct with a minor, all involving a victim under the age of 15. After a 13-day trial, the jury did not reach a verdict on the kidnapping charge but found Ackerman guilty of all the other charges. The court imposed consecutive sentences totaling 84.75 years, with credit for 1,170 days' presentence incarceration.

**¶9**        Ackerman timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018), 13-4031 (2018) and -4033 (2018).[3]

## DISCUSSION

### A.    Sufficiency of the Evidence.

**¶10**        Ackerman argues he was convicted solely based on false testimony by the victim. He argues her testimony was so inconsistent with her prior statements that the jury could not reasonably believe her. At the same time, Ackerman argues that other evidence before the jury was insufficient to convict him. He points to the forensic examination, which did not find spermatozoa on the victim and which Ackerman asserts concluded the victim suffered few injuries. Ackerman was charged as an accomplice to his roommate's criminal acts in several of the charges, and on appeal, Ackerman argues that no evidence of his roommate's DNA was found on the victim. As for his own DNA found on the victim, Ackerman argues the DNA could have been deposited on the victim when, as she testified, she used a towel in Ackerman's apartment to wipe herself because there was no toilet paper. Ackerman also argues his DNA could have been on the t-shirt that she put on when she could not find her own shirt.

**¶11**        The jury, however, was entitled to believe the victim's account of what happened in Ackerman's apartment that night. *See State v. Bernstein*, 237 Ariz. 226, 230, ¶ 18 (2015) (jury's role is to assess weight and credibility of evidence). None of the physical evidence that Ackerman contends supports his innocence disproves the victim's testimony supporting his convictions. Furthermore, Ackerman's theories of the physical evidence fail to explain away other evidence supporting the victim's account, including bruising on her neck and breast and the fact that the victim could describe the swastika tattoo above Ackerman's penis. As for inconsistencies in the accounts the victim gave over time, the State offered expert testimony that victims of sex crimes suppress memories of events and often fail to disclose uncomfortable details or disclose them in "piecemeal" fashion.

**¶12**        Moreover, the jury was entitled to consider inconsistencies and contradictions in Ackerman's testimony and disbelieve his assertion

---

[3]        Absent material revision after the date of an alleged offense, we cite a statute's current version.

that he did nothing wrong. For example, the jury saw Ackerman's initial interview with police, in which he claimed he had no memory of ever meeting the victim, and so was entitled to disbelieve the detailed recollection of that night's events to which he testified at trial.

## B. Impeachment Evidence.

¶13 Ackerman contends that the superior court improperly excluded a screenshot from a dating website allegedly showing that the victim made a false statement about her age. Contrary to his argument, however, the screenshot was inadmissible to attack the credibility of the victim. Rule 608(b) of the Arizona Rules of Evidence states that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." To be sure, "the court may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . a witness." Ariz. R. Evid. 608(b). Here, however, the court did not abuse its discretion by precluding evidence of the screenshot because the court could reasonably conclude that its impeachment value was cumulative: The victim admitted that she told Ackerman she was 17 when in fact she was 14, and thus the jury already knew she had lied about her age on another occasion. *See* Ariz. R. Evid. 403; *Hernandez v. State*, 203 Ariz. 196, 200, ¶ 15 (2002) (impeachment evidence subject to exclusion under Rule 403).

## C. Impasse Instruction.

¶14 After the jury had deliberated for some time, it announced it had reached a verdict and was called into court. As the court reviewed the verdict forms, it saw that the jury had returned verdicts on only two of the eight charges. The court excused the jury and discussed with counsel how to proceed. Over Ackerman's objection and motion for mistrial on the undecided counts, the court then read the jury the following impasse instruction:

> Ladies and gentlemen, in reviewing the verdict forms, it appears to the Court that you are unable to reach unanimous verdicts on every count. Because of that, we ask -- we ask that you consider each count separately. The fact that you have not reached a unanimous verdict on each count is proper. The law allows -- I'm sorry -- the law does allow us to inquire if there is further instructions or further brief argument by counsel that may assist you to reach a

unanimous verdict on other counts. The law allows, at your request, further legal instructions by the Court, and/or brief arguments by the attorneys on a particular issue you specify. In light of this instruction, please openly and fairly consult with each other and then through your foreman, advise whether further instructions may be useful, whether brief argument on a particular issue would be useful, whether further deliberations would be useful, or whether no further instructions, arguments or deliberations would be useful.

So we ask you to go back and tell us what you need, if you need, anything else. I'll hand the verdict forms back to the Bailiff and we'll excuse the jurors.

**¶15** The jury later submitted some questions and, after hearing further argument from counsel on those questions, the jury reached guilty verdicts on all but the kidnapping charge, which the court dismissed on the State's motion.

**¶16** After trial, Ackerman moved for a new trial, arguing that the court erred by giving the jury the instruction quoted above and instructing the jury to deliberate further. The court denied the motion. Ackerman argues on appeal that the court erred in giving the instruction.

**¶17** Rule 22.4 of the Arizona Rules of Criminal Procedure "permits judges to assist juries that are at an impasse." *State v. Huerstel*, 206 Ariz. 93, 99, ¶ 17 (2003). Specifically, Rule 22.4 states:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, in the parties' presence, ask the jury to determine whether and how the court and counsel can assist the jury's deliberations. After receiving the jurors' response, if any, the court may direct further proceedings as appropriate.

We have held Rule 22.4 "requires an affirmative indication from the jury it is in need of help before assistance may be offered." *Huerstel*, 206 Ariz. at 99, ¶ 17.

**¶18** Here, although the jury did not expressly say it was having difficulty reaching verdicts, the fact that it returned blank verdict forms on some charges while reaching verdicts on others indicated it was at an impasse on several counts. On the facts presented here, the superior court did not abuse its discretion in issuing the impasse instruction.

## D.     Alleged Prosecutorial Misconduct.

¶19     Ackerman claims the prosecutor intentionally elicited false testimony from the victim through "tampering, coercing and coaching." Ackerman does not offer direct evidence of tampering, coercing or coaching, however, and the mere fact that the prosecutor called the victim to the stand, where she gave testimony that was inconsistent with her prior statements, does not show that the prosecutor knowingly elicited false testimony.

¶20     Ackerman also asserts the prosecutor withheld impeachment evidence that the victim had falsely accused others of sexual misconduct on other occasions.  Ackerman does not cite anything in the record supporting this allegation, and our examination of the record reveals no support for it. Ackerman further contends the State failed to disclose evidence that the victim had created a profile on an online dating service stating her age as 23 when she was only 17.  Nothing in the record before us supports this allegation, and at any rate, Ackerman had this evidence at trial, as discussed above.

¶21     Ackerman contends that the State breached an obligation under Rule 15.1 of the Arizona Rules of Criminal Procedure to record all of its interviews of the victim and disclose those recordings.  Ackerman is mistaken.  Although Rule 15.1(b)(1) requires the State to disclose any relevant written or recorded statements of witnesses it intends to call at trial, the rule does not require "the state . . . to make a recording any time its representatives speak with a witness." *State v. O'Neil*, 172 Ariz. 180, 181 (App. 1991).  "[N]othing in the criminal discovery rules . . . require[s] the state to create or produce evidence, specifically statements, which it must then disclose." *Id.*

¶22     Ackerman argues that the prosecutor, in "a deliberate attempt to sabotage [his] testimony," engaged in various antics during Ackerman's direct examination, thereby distracting the jury from his testimony.  He also contends that portions of the prosecutor's cross examination of him were "egregiously improper."  Ackerman fails to point to anything in the record evidencing these assertions, however, and the record does not show that Ackerman's counsel raised any objections to the prosecutor's conduct during Ackerman's testimony.

¶23     Ackerman accurately states that the prosecutor "repeatedly brought up [his] swastika tattoo" at trial.  Among other occasions, the prosecutor referred to the tattoo during opening statements, and in

questioning the victim, the State elicited testimony that the victim had seen the tattoo above Ackerman's penis. But at no point did Ackerman's attorney object to any of these references to the swastika tattoo. Before opening statements, the State filed a motion *in limine* announcing it intended to introduce evidence of the tattoo to prove identity. The record does not reveal any effort by Ackerman's counsel to oppose the motion or otherwise object to the State's use of that evidence. Given the defense's lack of objection and the probative value of the tattoo evidence -- its location and the victim's identification of it tended to show that the victim saw Ackerman in a state of undress –- the mentions of the tattoo do not raise an appealable issue. *See State v. Montano*, 204 Ariz. 413, 425, ¶ 58, *supplemented*, 206 Ariz. 296 (2003) (Rule 403 cannot be basis for appeal where objection not raised in the superior court).

## E.      Purported Ineffective Assistance of Counsel.

**¶24**      Ackerman contends his trial counsel failed in various respects, including failing to explore the victim's mental health history, which he says would have yielded impeachment material; failing to object to inflammatory and prejudicial testimony; and failing to call expert witnesses to rebut the State's witnesses. We do not address such claims on direct appeal; if he wishes, Ackerman may raise them in future proceedings under Rule 32 of the Arizona Rules of Criminal Procedure. *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

## F.      Expert Witnesses.

**¶25**      Ackerman argues the superior court erred by failing to appoint a forensic child psychologist and other expert witnesses to rebut the State's expert witnesses. At the relevant time, former Rule 15.9(a) of the Arizona Rules of Criminal Procedure provided that "[a]n indigent defendant may apply for the appointment of an investigator and expert witness . . . if the defendant can show that such assistance is reasonably necessary to present a defense adequately at trial or sentencing." *See also Jacobson v. Anderson*, 203 Ariz. 543, 545, ¶ 5 (App. 2002) ("Indeed, due process requires the appointment of expert witnesses for an indigent defendant when such testimony is reasonably necessary to present an adequate defense.").[4] But while the superior court has the discretion to *sua sponte* appoint a reasonably necessary expert witness, *see* A.R.S. § 13-4013(B) (2018) ("the court *may* on its own initiative . . . appoint investigators and

---

[4]      The rule has since been rewritten and relocated. *See* Ariz. R. Crim. P. 6.7(a).

expert witnesses as are reasonably necessary to adequately present a defense at trial" (emphasis added)), the court is not required to do so. Ackerman provides no support for the contention that a defendant can go to trial without asking the court to appoint an expert, and then, when the desired result is not achieved at trial, obtain a new trial for lack of an expert. To the extent Ackerman argues that his counsel failed to take steps to obtain reasonably necessary expert testimony, we do not address issues of counsel's alleged ineffectiveness on direct appeal. *See Spreitz*, 202 Ariz. at 3, ¶ 9.

**¶26**        Ackerman also contends the superior court improperly denied his forensic expert access to certain photographs taken during the victim's forensic examination and denied discovery of the victim's medical records. The record does not support these contentions. After Ackerman changed counsel, the court denied without prejudice a motion for disclosure of the photographs filed by Ackerman's previous attorney because the court was uncertain whether the motion reflected current counsel's views. The motion was never refiled. As for the victim's medical records, Ackerman does not point to, and we have not found, any indication in the record showing the court denied him discovery.

**¶27**        Ackerman also argues the court erred by failing to grant a request for appointment of a private investigator he made on January 22, 2016. The transcript of the pretrial conference held that day, however, does not reflect any such request.

## G.    Accomplice Liability.

**¶28**        Ackerman contends that the court improperly instructed the jury that it could find him liable as an accomplice because there was "no direct evidence [that Ackerman's roommate] was guilty of anything." But the victim testified Ackerman's roommate committed the offenses, and Ackerman aided his roommate in committing those offenses by, among other things, helping to take off the victim's clothes. The record shows the court gave the jury the appropriate instruction on accomplice liability. *See* A.R.S. §§ 13-301 (2018), -303 (2018); *State v. Adrian*, 111 Ariz. 14, 17 (1974) ("When a person aids, assists, procures or counsels another in the commission of a crime, all are principals and equally guilty.").

## H.    Other Matters.

**¶29**        The record reflects Ackerman received a fair trial. He was represented by counsel at all stages of the proceedings against him and was present at all critical stages. The court held appropriate pretrial hearings.

Pursuant to Rule 609 of the Arizona Rules of Evidence, the court held a hearing on Ackerman's prior conviction and sanitized it for the jury. The court did not conduct a voluntariness hearing, but by failing to move to suppress his statements, ask for a voluntariness hearing or otherwise object to admission of the statements, Ackerman forfeited any argument about the voluntariness of the statements. *See State v. Bush*, __ Ariz. __, No. CR-11-0107-AP, 2018 WL 3910681, at *10, ¶ 54 (Ariz. Aug. 16, 2018).

¶30 The State presented both direct and circumstantial evidence sufficient to allow the jury to convict. The jury was properly comprised of 12 members, who returned unanimous verdicts, which were confirmed by juror polling.[5] The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict. The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed legal sentences for the crimes of which Ackerman was convicted.

## CONCLUSION

¶31 We have reviewed the entire record for reversible error and find none, and therefore affirm the convictions and resulting sentences. *See Leon*, 104 Ariz. at 300.

¶32 Defense counsel's obligations pertaining to Ackerman's representation in this appeal have ended. Counsel need do no more than inform Ackerman of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to

---

[5] The transcript shows that Juror 11, an alternate juror who was dismissed before jury deliberations commenced, was polled and concurred in the verdict. This court has obtained courtroom video of the jury polling and confirmed that the reference to Juror 11 during polling was a transcription error: Juror 11 was not polled, and there is no evidence from the video that any more than the requisite 12 jurors participated in deliberations.

the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  On the court's own motion, Ackerman has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration.  Ackerman has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA