NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHRISTOPHER LEE SAUNDERS, *Appellant.*

No. 1 CA-CR 15-0416
FILED 6-14-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-001000-001
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

<hr />

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Randall M. Howe and Judge Andrew W. Gould joined.

<hr />

J O H N S E N, Judge:

**¶1**     Christopher Lee Saunders appeals his conviction of armed robbery, a Class 2 felony. For the reasons that follow, we affirm his conviction and resulting sentence.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**     Saunders entered a sandwich shop and placed a plastic bag and a hand-written note torn from a spiral notebook on the counter.[1] The note read, "I have a gun, put the money in the bag and step away, nobody dies." Before the owner had a chance to read the note, however, Saunders pulled out what appeared to be a gun, and the owner gave Saunders $200 from the cash register. Saunders left the restaurant on a white BMX bike with black rims and black handlebars.

**¶3**     Responding officers interviewed the restaurant owner and reviewed restaurant surveillance video footage. After identifying Saunders as a suspect, officers obtained and executed a search warrant for his apartment. Officers seized a black hand brace, a pair of men's dark sunglasses, a backpack, a long-sleeved black shirt and a white and gray BMX bicycle with black handlebars, all of which were consistent with the surveillance footage. Officers also seized a small spiral-bound notebook from inside the backpack; in the notebook was a page of paper from which a fragment had been torn.

**¶4**     At trial, a forensic document examiner testified about paper-matching and handwriting analyses he conducted on the stick-up note. The document examiner opined that the fragment of a sheet of paper on which the note was written had been ripped from the spiral-bound notebook found in the backpack in Saunders's apartment. He also testified that there were indications Saunders wrote the note but he could not conclusively

<hr />

[1]     We view the trial evidence in the light most favorable to sustaining the jury's verdict. *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

identify Saunders as the writer. A jury found Saunders guilty, and the superior court sentenced him to 15.75 years' imprisonment and $200 in restitution. Saunders timely appealed; we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) (2016), 13-4031 (2016) and -4033(A)(1) (2016).[2]

## DISCUSSION

## A.    Legal Principles.

¶5        Saunders argues the superior court should not have admitted the document examiner's testimony because his opinions did not comport with the requirements of Arizona Rule of Evidence 702. That rule governs admission of expert testimony, and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

¶6        We review the superior court's admission of expert testimony for an abuse of discretion. *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 13 (2014). The superior court judge serves as "gatekeeper," determining whether the proposed expert testimony is relevant and admissible, but "it is the province of the jury to determine the weight and credibility of the testimony[.]" *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 298, ¶¶ 19-20 (App. 2014) (quoting Ariz. R. Evid. 702 cmt. to 2012 amendment). "We review the interpretation of a court rule *de novo*." *Salazar-Mercado*, 234 Ariz. at 592, ¶ 4.

---

2        Absent material revision after the date of an alleged offense, we cite a statute's current version.

## B. Paper-Matching Analysis.

¶7            Saunders argues that, in violation of industry standards, the paper-matching analysis was conducted after the note had been subjected to other forensic testing.  In support of his argument, Saunders points to guidelines for the analysis of paper-matching issued by the American Society for Testing and Materials ("ASTM").  That publication, titled "Standard Guide for Physical Match of Paper Cuts, Tears, and Perforations in Forensic Document Examinations," states: "The results of prior storage, handling, testing, or chemical processing (for example, for latent prints) can interfere with the examination of certain characteristics.  Whenever possible, document examinations should be conducted prior to any chemical processing.  Items should be handled appropriately to avoid compromising subsequent examinations."  The document examiner testified the note was slightly discolored when he examined it because it had been already tested for latent fingerprints.  Saunders argues that by examining the note after it had been tested for prints, the document examiner failed to follow the ASTM guidelines, thereby rendering the testimony inadmissible under Rule 702(d).

¶8            Rule 702(d) requires the superior court to determine whether an expert has reliably applied the applicable standards in formulating his or her opinion. *See State v. Bernstein*, 237 Ariz. 226, 229, ¶ 13 (2015).  But the court is not required to exclude expert testimony based on any slight variation from standards.  "Rule 702 contemplates that expert testimony can be 'shaky' yet admissible. . . .  Errors in the application of a generally reliable methodology, therefore, should not serve to exclude evidence unless they are so serious as to render the results themselves unreliable." *Id.* at ¶¶ 14-15.

¶9            Contrary to Saunders's argument, the ASTM guidelines suggest but do not require that paper-matching testing be performed before the evidence is subjected to any other analyses.  Although the guidelines caution that other testing may affect the paper-matching analysis, "not all errors in the application of reliable principles or methods will warrant exclusion." *Id.* at ¶ 14.  More importantly, the examiner here testified that the discoloration of the paper did not affect his analysis: "[A]s far as the tear match examination, the previous latent print processing did not hinder that exam whatsoever."

¶10            Saunders also argues that the paper-matching testimony should have been excluded under Rule 702(a) because the testimony was not helpful to the jury.  Saunders contends that because the examiner

admitted that a lay person could have conducted the same analysis, the testimony did nothing to aid the jury in understanding the evidence. Contrary to Saunders's contention, however, the document examiner explained that although a lay person could have put the two pieces of paper together "like a jigsaw puzzle[,]" he also testified he used special equipment and expertise in performing his analysis. The document examiner explained that he used a high-magnification camera that allowed him to look at the individual tears and match up the paper fibers. The examiner's testimony involved specialized knowledge and aided the jury in determining whether the note had come from the notebook recovered at Saunders's apartment.

¶11        For these reasons, the superior court did not abuse its discretion in admitting the paper-matching testimony.

## C.        **Handwriting Analysis.**

¶12        Saunders further argues insufficient data supported the document examiner's handwriting analysis as required by Rule 702(b). He also argues the examiner's opinion was too vague to be helpful to the jury as required by Rule 702(a).

¶13        The document examiner explained that in analyzing whether the writing on the note belonged to Saunders, he used a nine-point scale, ranging from one ("conclusive elimination") to nine ("conclusive identification") with five ("inconclusive") in the middle. After comparing the note to a sample of Saunders's handwriting, the document examiner opined there were indications the two samples were written by the same person, concluding the identification was a six on the nine-point scale. At trial, the document examiner explained that the limited sample size and overwriting of letters on the note were the most significant factors limiting his ability to make a conclusive identification. Saunders argues that the examiner's inconclusive opinion, undermined by the limited sample size and overwriting, should not have been admitted because it was neither helpful to the jury nor supported by sufficient data.

¶14        Notwithstanding Saunders's arguments, sufficient data supported the document examiner's handwriting analysis. The examiner testified, "[T]he amount of writing on the questioned note was limited but there was still enough there to do an examination and a comparison between the questioned note and the known writing I had of Mr. Saunders." Although the examiner's final conclusion was less than conclusive, he was able to point out similarities between the note and Saunders's writing

5

sample. As the court noted when it denied Saunders's motions to exclude the testimony, "The concerns noted go greater to the weight of the evidence, to be determined by the trier of fact, rather than to its admissibility."

¶15 Because the document examiner had sufficient data to conduct the handwriting analysis and because the testimony aided the jury in deciding whether Saunders had written the stick-up note, the superior court did not abuse its discretion in admitting the testimony. As the superior court found, Saunders's arguments concerning the certainty of the examiner's conclusion went to the weight the jury could give to the examiner's testimony, not to its admissibility.

## CONCLUSION

¶16 For the foregoing reasons, we affirm Saunders's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: AA