NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In Re The Matter Of:

WENDY LYNN LARCHICK, *Petitioner/Appellee*,

*v.*

ROBERT JOHNSTON POLLOCK, *Respondent/Appellant*.

No. 1 CA-CV 19-0649 FC
FILED 9-2-2021

Appeal from the Superior Court in Maricopa County
No. FN2017-004494
The Honorable Michael C. Blair, Judge

**VACATED AND REMANDED IN PART**

COUNSEL

Berkshire Law Office, P.L.L.C., Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellant*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Amy H. Hoffman
*Counsel for Petitioner/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop[1] and Judge Samuel A. Thumma joined.

---

**C A M P B E L L**, Judge:

**¶1**          Robert Johnston Pollock ("Husband") appeals from a decree dissolving his marriage to Wendy Larchick ("Wife"). He challenges the family court's rulings on (1) the admissibility of expert testimony, (2) the division of property, and (3) a partial award of attorneys' fees to Wife. For the following reasons, we vacate the decree in part and remand for further proceedings consistent with this decision.

**BACKGROUND[2]**

**¶2**          Husband and Wife married in October 2016. Before the marriage, Wife started a real estate business ("the Business"). During the marriage, Wife created, and was the managing member of, a limited liability company ("the LLC"). In April 2017, the LLC purchased real property (the "Property") that Wife used as the office for the Business.

**¶3**          Approximately ten months after the parties married, Wife served Husband with a petition for legal separation (later converted into a petition for dissolution). Over Wife's objection, Husband claimed a

---

[1]          Judge Lawrence F. Winthrop was a sitting member of this Court when the matter was assigned to this panel of the court. He retired effective June 30, 2021. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Winthrop as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

[2]          "We view the facts in the light most favorable to sustaining the [family] court's findings and orders." *Hefner v. Hefner*, 248 Ariz. 54, 57, n.2 (App. 2019) (citation omitted).

community interest in both the Property and in the increased value of the Business during the marriage.

¶4 Following a trial in October 2018, the family court entered orders dividing certain property and dissolving the parties' marriage. The court did not, however, address the division of the Property or the allocation of the Business' alleged increased value. Instead, the court ordered a second trial to determine whether the Business increased in value during the marriage, and, if so, the cause of that increase.

¶5 Before the second trial, Husband timely disclosed a "calculation of value" report by his expert, Don Bays, opining that the Business increased in value by $546,041 during the marriage. In his pretrial statement, Husband explained the methods Bays used to determine the increase. Wife, in turn, timely disclosed her expert's "full appraisal" report, stating that the Business increased in value by $93,000 during the marriage. Claiming Husband's "calculation of value" report was not as reliable as other, more complete types of valuation reports, Wife objected to the admission of Bays' report and corresponding testimony under Arizona Rule of Evidence ("Rule") 702.

¶6 Both experts were present at the second trial. Wife was allowed to *voir dire* Bays before the family court ruled on her objection to him testifying at trial. Bays testified he had advised Husband that "in the event that testimony is required, either at a deposition or trial, *we require* the calculation schedules be upgraded to a formal summary valuation report with a conclusion of value." (emphasis added). Citing an unpublished decision (*Mortensen v. Mortensen*, No. 1 CA-CV 15-0097 FC, 2016 WL 3211196, at *1-4, ¶¶ 1-19 (App. 2016) (mem. decision)), Bays explained that his retention letters generally advise clients that "[*he*] would rather" prepare "summary valuation" reports for purposes of providing business valuations. He further added that he did not prepare the type of report "[*he*] would require" in this matter. (emphasis added).

¶7 After hearing testimony and argument, the family court sustained Wife's objection and excluded Bays' anticipated opinion testimony. Along with stating that Bays "did not follow all possible methods that an expert should be using, all reliable methodology," the court stated it excluded the testimony because Bays admitted he did not expect his report would be admissible at trial.

¶8 Husband then attempted to call Wife's expert to testify as an adverse witness. Although listed by both parties as a trial witness and

present to testify, the family court sustained Wife's objection to Husband's attempt. The court reasoned that Husband did not subpoena Wife's expert and she was therefore under no obligation to testify. After excluding Husband's expert and precluding Husband from calling Wife's expert, the court granted Wife's motion for a directed verdict because there was "no evidence presented . . . that there was an increase in the business."

¶9         The family court then considered Husband's community claim to the Property. Wife provided the court with the purchase contract for the Property, which named Wife and the Business as buyer. She also provided a loan agreement for the purchase of the Property. That agreement named the LLC as the borrower, was signed by Wife in her capacity as the LLC's managing member, and identified Wife and the Business as guarantors. Wife asserted that the remainder of the purchase price was paid for with her "sole and separate funds." For his part, Husband directed the court to a marital-community joinder on the guarantee. The court found that because there was never any default on the loan, the "marital guarantee," which was Husband's "only tie" to the Property, no longer existed. Accordingly, the court ruled that Husband had "no community claim" to the Property.

¶10        After trial, the family court awarded Wife a portion of her attorneys' fees and costs, finding that Husband's "unreasonableness" in failing to prepare and present admissible testimony at trial outweighed "the substantial disparity that [W]ife earns more." Husband unsuccessfully moved to alter or amend the court's resulting final judgment and then timely appealed.

## DISCUSSION

¶11        As an initial matter, we address the family court's decision to dissolve the parties' marriage while retaining jurisdiction to decide property issues.

¶12        Under Arizona's statutory scheme, property-allocation issues must be resolved concurrent with dissolution. Section 25-312(4) provides that "[t]he court shall enter a decree of dissolution of marriage *if*," among other things, "[t]o the extent it has jurisdiction to do so, the court has considered, approved and made provision for . . . the disposition of property." (emphasis added). Similarly, A.R.S. § 25-318(A) provides that, when dissolving a marriage, "the court *shall* assign each spouse's sole and separate property to such spouse . . . [and] it *shall* also divide the community, joint tenancy and other property held in common equitably."

(emphasis added). *See also Dole v. Blair*, 248 Ariz. 629, 633, ¶ 12 (App. 2020) ("A.R.S. § 25-318 is clear in its mandate that community property must be divided on dissolution of the marriage."); A.R.S. § 25-327(A) (contemplating inclusion of property-division provisions in decree).

**¶13**         We conclude that the family court erred by bifurcating its rulings. But the error did not render the dissolution, which neither party appealed, void. *See Porter v. Estate of Pigg*, 175 Ariz. 194, 196-97 (App. 1993) (holding that A.R.S. § 25-312's command regarding property disposition does not make a pre-disposition dissolution void, but, rather, merely correctable by timely appeal), *approved by* 175 Ariz. 303; *see also* A.R.S. § 25-318(D) (providing for automatic imposition of tenancy in common for commonly held property "for which no provision is made in the decree"). Nor does the error deprive us of jurisdiction to consider the appeal from the post-dissolution property rulings. *See Cooper v. Cooper*, 167 Ariz. 482, 487 (App. 1990) (holding that wife had right to bring action to divide property that parties knew about at time of decree but that was omitted from decree); *Ringegar v. Ringegar*, 231 Ariz. 85, 88, ¶ 12 (App. 2012) (recognizing that party may seek allocation of property omitted from decree either by separate civil action or by motion to reopen dissolution). Having jurisdiction in this matter, we now turn to the issues raised on appeal.

## I.      The Family Court Erred by Precluding Bays' Testimony.

**¶14**         Husband argues the family court improperly precluded Bays from testifying because his opinion was based on a "calculation of value" report rather than a more thorough "summary valuation" report. Wife counters that Husband knew, and his expert admitted, that the testimony would be inadmissible because it did not employ the appropriate "methodology."

**¶15**         We review a family court's ruling on the admissibility of expert testimony under Rule 702 for an abuse of discretion. *See Vanoss v. BHP Copper Inc.*, 244 Ariz. 90, 96, ¶ 13 (App. 2018). Although Rule 702 "recognizes that trial courts should serve as gatekeepers" to ensure expert evidence is reliable (and helpful) to the finder of fact, this "gatekeeping function is not intended to replace the adversary system." *State v. Bernstein*, 237 Ariz. 226, 229, ¶ 14 (2015) (citing Ariz. R. of Evid. 702 cmt.). Rather, "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking *shaky but admissible evidence*." *Id.* (citation omitted) (emphasis added).

¶16 Rule 702 does not require expert opinion evidence to account for "all possible methods" of assessment, which would be an impossible standard in practice. Accordingly, to the extent Bays' evidence was excluded because he "did not follow all possible methods," such a ruling would be error under Rule 702. However, Bays' evidence was not excluded based on an application of Rule 702, but out of deference to his self-imposed cautionary views regarding admissibility. Bays' statements reflect his *personal* view that in creating the "calculation of value" report, he did not employ "all the [possible] processes and procedures" of a full "summary valuation" analysis. Bays, however, was not the proponent of the evidence, was not offered as an expert regarding the admissibility of the evidence, and was not qualified to offer legal opinions on the admissibility of the evidence. Husband, as the proponent of the evidence, was entitled to have it evaluated under the applicable Rules of Evidence, including Rule 702. The "calculation of value" evidence may well have been questionable and, even if admissible, vulnerable to effective cross-examination, but it was not automatically inadmissible. As the trier of fact, the family court was free to give it little or no weight at trial. But the court could not simply declare the evidence inadmissible without conducting a Rule 702 analysis to the proffered evidence.

¶17 Moreover, a "calculation of value" report is not *per se* unacceptable or inadmissible as evidence of value. *See Mortensen*, 1 CA-CV 15-0097 FC, at *1-4, ¶¶ 1-19; *see also Driss v. Driss*, 1 CA-CV 18-0243 FC, 2019 WL 544495, at *1-3, ¶¶ 1-11 (App. 2019); *Stickler v. Stickler*, 1 CA-CV 19-0115 FC, 2020 WL 62473, at *1-3, ¶¶ 1-16 (App. 2020). Here, the family court apparently precluded Bays' testimony because his "calculation of value" report did not consider every single process and procedure included in a full "summary valuation" report. Although perhaps presenting substantial cross-examination fodder, failing to consider every single process, standing alone, does not render the evidence inadmissible. *State v. Bernstein*, 237 Ariz. 226, 229, ¶ 14 (2015).

¶18 Wife argues on appeal that *Mortensen* supports the exclusion of Bays' evidence. In *Mortensen*, however, the court allowed the expert to testify at trial. 1 CA-CV 15-0097 FC, at *2, ¶ 3. On appeal, this Court upheld the court's rejection of the expert's "calculation of value" report because it was "incomplete and unreliable," and "[t]he record containe[d] evidence supporting these findings." *Id.*, at *3, ¶ 17. No such process was followed, nor were findings made, in this case. Moreover, as indicated elsewhere in *Mortensen*, an expert's failure to "use the most appropriate method of valuation" and "consider *all* appropriate data" for a business valuation does not preclude admissibility. *Id.* at *4, ¶ 18 (emphasis added). Such

failures may indicate "flaws" in an expert's valuation but are ultimately "matters of credibility that are within the family court's discretion." *Id.* (citing *Bernstein*, 237 Ariz. at 229, ¶ 14).

**¶19** Because the court failed to undertake a Rule 702 inquiry, Rule 702 cannot provide a basis for precluding Bays' evidence. Nor does Bays' personal views or the holding in *Mortensen* automatically preclude the admissibility of Bays' evidence. Accordingly, on the record presented, Bays' evidence was not properly excluded. As a result, we remand for the family court to properly determine the admissibility of Bays' evidence, which appears to have been prepared and timely disclosed, and if admitted, the proper weight to afford that evidence. Given this resolution, the court's award of attorneys' fees to Wife (characterizing Husband's trial positions as unreasonable) is vacated for further consideration following proceedings on remand.

**¶20** Given this ruling, we need not resolve Husband's argument that the family court erred by precluding him from calling Wife's expert, who had been listed as a potential witness by both parties and was present in the courtroom on the day of trial, to testify. In doing so, however, we note that the presence or absence of a subpoena directed to a trial witness who appears at trial is not dispositive as to whether an opposing party may call that witness to testify. *Cf. Gordon v. Indus. Comm'n*, 23 Ariz. App. 457, 459 (1975) (explaining that "[t]he purpose of a subpoena is to obtain the presence of a witness at the hearing," adding that "[o]nce that witness is present, barring any sort of privilege, generally, either party may call him to testify"); *Garcia v. Indus. Comm'n*, 20 Ariz. App. 243, 246 (1973) ("[T]here is nothing to prevent a party from presenting witnesses who are willing to appear and testify without being subpoenaed.").

## II. The Family Court Erred by Concluding There Was No Evidence of the Business' Increase in Value During the Marriage.

**¶21** Husband does not dispute that the underlying Business is Wife's sole and separate property. Rather, he contends that based on Wife's own pretrial statements, the Business undisputedly increased in value. At minimum, the Business increased in value by $93,000 during the marriage, a sum identified in Wife's own pretrial statement. Therefore, Husband argues, the family court incorrectly placed the burden on him to prove that he was entitled to a portion of the Business' increase and erred in refusing to grant him a share of the increased value.

**¶22** It is the burden of the spouse claiming a separate property interest to show that the increased value of a business during the marriage remained separate property. *See Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 257, ¶ 34 (App. 2008); *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979) (stating, in such circumstances, "the burden is upon *the spouse who contends that the increase is also separate property to prove* that the increase is the result of the inherent value of the [business] itself and is not the product of the work effort of the community") (emphasis added). "When a spouse argues [he] has increased the value of the other spouse's separate property through community labor and funds, 'the *burden is on the claimant to show the amount of the increase.*'" *Hefner*, 248 Ariz. at 60, ¶ 17 (quoting *Tester v. Tester*, 123 Ariz. 41, 44 (App. 1979) (emphasis added). Here, Husband has not attempted to show that *he* increased the value of the Business. Instead, Husband's position is that Wife did so on behalf of the community. As a result, the burden was on Wife to show that the increased value of the Business during marriage remained separate property. *See Rueschenberg*, 219 Ariz. at 257, ¶ 34; *Cockrill*, 124 Ariz. at 52.

**¶23** Wife argues that information in her various pretrial statements regarding how the Business increased in value given her efforts is "irrelevant" because Husband had the burden to prove the amount of increase during the marriage. She goes on to argue that she did not agree with her expert's opinions, but merely "summarized" them for inclusion in her pretrial statement. Among other things, pretrial statements must contain "detailed and concise statements of contested issues of fact and law," as well as "*a position on each contested issue*." Ariz. R. Fam. Law 76.1(f)(6)-(7) (emphasis added). Wife's pretrial statement informed the family court what her evidence would show. Nowhere did she claim, pretrial, that she did not agree with her expert's findings, and she was under no obligation to disclose expert opinions with which she disagreed. Having disclosed those opinions, however, they became relevant and provided a basis upon which the court could rely. Contrary to the court's conclusion, there was evidence of the Business' increase during the marriage at the second trial. On remand, the court must determine the amount, if any, that should be attributed to the community for division.

### III. The Family Court Erred by Dismissing Husband's Community Claim to the Property.

**¶24** Husband argues the family court improperly imposed on him the burden to show there was a community claim to the Property, and "erred in finding that [he] had no community claim" to the Property in the absence of evidence showing Wife purchased the Property with a portion

of her sole and separate funds. Wife counters that "there is no evidence in the record to demonstrate that this could have ever been community property."

¶25        We review de novo the family court's characterizations of property as separate or community. *Shickner v. Shickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). Subject to exceptions not applicable here, "[a]ll property acquired by either husband or wife during the marriage is the community property of the husband and wife." A.R.S. § 25-211(A); *see also Hammett v. Hammett*, 247 Ariz. 556, 559, ¶ 14 (App. 2019). To rebut this strong presumption, the spouse contending such property is separate has the burden of establishing the property is inherently separate by "clear and convincing evidence." *Nace v. Nace*, 104 Ariz. 20, 22-23 (1968) (citations omitted); *see also Brebaugh v. Deane*, 211 Ariz. 95, 97-98, ¶ 6 (App. 2005). In the absence of a contrary showing, all property acquired during the marriage, by either spouse, is community property. *Benson v. Hunter*, 23 Ariz. 132, 134-35 (1921).

¶26        In reasoning that Husband lacked ties to the Property absent the marital guarantee that was no longer in effect, the family court implicitly placed the burden on Husband to prove he was entitled to a community share of the Property. However, the absence of Husband's personal liability for debt secured by the Property did not resolve the community nature of the Property. Moreover, Wife did not prove the source of her allegedly separate funds used to purchase the Property. When a claim is made that "property purchased during the existence of a marriage is the separate property of one the spouses, *the fund* with which such property was acquired *must be clearly shown* to have been the separate property of such spouse." *Blaine v. Blaine*, 63 Ariz. 100, 109-10 (1945) (emphasis added).

¶27        Here, the LLC apparently financed a significant portion of the purchase price of the Property with a $341,250 loan. Although Wife asserted that the remainder was paid with her "sole and separate funds," no trial evidence reveals the source of those funds. Accordingly, because the evidence does not support a finding that Husband had no community claim to the Property, we vacate the family court's finding to the contrary and remand for further proceedings.

**CONCLUSION**

¶28        We vacate the decree in part and remand for further proceedings consistent with this decision. On remand, the family court will

9

need to address the admissibility of Bays' testimony, the source of the funds used to purchase the Property, and the award, if any, of attorneys' fees. In our discretion, we decline both parties' requests for attorneys' fees on appeal under A.R.S. § 25-324. As the prevailing party, however, Husband is entitled to recover taxable costs incurred on appeal upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA