NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JUSTIN B. WEBBER, *Petitioner/Appellant*,

*v.*

KRISTINA A. WEBBER, *Respondent/Appellee*.

No. 1 CA-CV 23-0669 FC
FILED 10-08-2024

Appeal from the Superior Court in Navajo County
No. S0900DO202200338
The Honorable Melinda K. Hardy, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

White Mountain Law Group, P.L.C, Show Low
By Michael R. Ellsworth
*Counsel for Petitioner/Appellant*

Crider Law, PLLC, Mesa
By Brad J. Crider
*Co-Counsel for Respondent/Appellee*

Gillespie Shields & Taylor, Phoenix
By Mark A. Shields
*Co-Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge David D. Weinzweig joined.

_____

**M O R S E**, Judge:

¶1        Justin Webber ("Father") appeals from a decree of dissolution's provisions regarding legal decision-making authority, parenting time, supervision, child support, spousal maintenance, and division of community debt.  For the following reasons, we affirm in part and vacate and remand in part.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Father and Mother married in 2008.  They share six children born between 2009 and 2019.  Father is a physician and earns approximately $236,000 annually.  Mother worked until 2012 when she became a homemaker.

¶3        After leaving the workforce, Mother homeschooled their six children.  When the three eldest children turned ten or eleven, they each entered public schools.  The Webbers continue to homeschool their three youngest children.

¶4        Mother is also responsible for managing their fourth child's medical care.  The child has a cleft palate requiring regular doctors' appointments and multiple surgeries.  Mother drives the child to and from each appointment.

¶5        In 2011, Father began medical school.  Father borrowed $382,006 in student loans.  He claims he used $142,680 to pay for tuition and $274,928 to pay for living and other expenses.  Before marriage, Father had taken out a loan for his undergraduate degree.  Although Mother testified that the undergraduate loan was consolidated into the medical-school loan, Father asserted that the undergraduate loan was paid off before he incurred the medical-school debt.  Father asked that Mother pay half of the non-tuition debt used for living expenses but assumed full responsibility for the cost of tuition and other "schooling expenses."

¶6          In 2021, Father became a physician at Whiteriver Indian Hospital in Arizona where he works Wednesday to Tuesday every other week. Although Father made efforts to be with the family at dinner and during the weekends, Father's work limited his involvement in the children's schooling, extracurricular activities, and scheduling doctor appointments.

¶7          For three years prior to dissolution, Father's mother, Carrie Webber ("Grandmother") regularly stayed at the Webbers' house on the weekends to help care for the children. However, Mother believes Grandmother has "very extreme parental ideas," and "disciplines very extremely." For example, Mother interfered when Grandmother attempted to place the Webbers' four-month-old baby in a crib for crying and when Grandmother placed their 18-month-old toddler in time outs. Father's sister described Grandmother's interactions with her own children when they were young as "very unhealthy and unsafe and toxic."

¶8          In 2022, Father filed for divorce. Both parties agreed to joint legal decision-making. However, at trial, Father sought final decision-making in educational matters to enroll the three youngest children in public school. Mother believed the children should continue to be homeschooled. Father also requested a week-on, week-off parenting-time plan to accommodate his work schedule. Mother opposed this plan and asked the court to limit Father's parenting time to two weekends per month and certain school breaks and holidays. Finally, Father asked that the court only award spousal maintenance if Mother assumed half of the portion of his student loan used for non-tuition expenses. Father argued Mother should be required to seek employment and presented expert testimony related to Mother's alleged earning capacity.

¶9          In its statutory best-interest findings, the court found that the children have a good relationship with both parents. *See* A.R.S. § 24-403(A)(1). The court determined the children are adjusted to their current home, community, and schooling, and should remain in their current educational location, including homeschooling for the three youngest children. *See* A.R.S. § 24-403(A)(3). Relatedly, the court found that the Webbers' child with a cleft palate has special medical needs that will require him to miss school for treatment. *See* A.R.S. § 24-403(A)(5). The court credited Father's sister's testimony and stated its concern about Grandmother's relationship and interactions with the grandchildren.

¶10        After analyzing the best-interest factors, the court found that a week-on, week-off parenting-time schedule would not be in the children's

best interests because Father would be "unable to [sic] all that the minor children require." Thus, the court awarded Father 136 to 141 days of parenting time per year, consisting of every other weekend, an additional day each month, and alternating holidays.

¶11 Regarding financial support, the court ordered Father to pay $4,313 per month in spousal maintenance for six years and $3,762 per month in child support. For both calculations, the court did not attribute any income to Mother because of Mother's long absence from the work force, the need to homeschool three of her children, and the special medical needs of one of the children. After the court issued its judgment, Father filed a motion to amend, claiming errors in the calculation of his child-support obligation. *See* Ariz. R. Fam. Law P. 83(a). The court granted his motion in part, reducing his obligation from $3,762 to $2,192 per month. As to student loans, the court found that Father should be solely responsible because his college loan before marriage was not fully paid off at the time he took out the medical-school loan.

¶12 The court issued its judgment under Rule 78(b). Because the superior court certified the order under Rule 78(b) as "an appealable judgment as to one or more, but fewer than all, claims," we have jurisdiction to consider the orders on appeal under A.R.S. § 12-2101(A)(2). *See Bollermann v. Nowlis*, 234 Ariz. 340, 342, ¶ 12 (2014) (stating that rulings on the merits that include Rule 78(b) language are appealable even if attorney fees are unresolved).

## DISCUSSION

### I. Parenting Time and Legal Decision-Making.

¶13 We review legal decision-making and parenting time orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013). An abuse of discretion exists when the trial court makes an error of law, *State v. Bernstein*, 237 Ariz. 226, 228, ¶ 9 (2015), or when "the record, viewed in the light most favorable to upholding the trial court's decision, is 'devoid of competent evidence to support' the decision," *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (citation omitted). "We review matters of law, including the interpretation of statutes and court rules, de novo." *Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019).

#### A. Legal Decision-Making.

¶14 The court assigned Mother and Father joint legal decision-making authority but gave Mother "presumptive decision-making

4

authority" regarding "major issue[s]" if the parties disagreed after good-faith negotiation. Father argues the superior court's award of "presumptive decision-making authority" to Mother is inconsistent with A.R.S. §§ 25-401, 403 and *Nicaise v. Sundaram*, 245 Ariz. 566 (2019). Specifically, Father claims that the court effectively awarded Mother sole legal decision-making authority by giving her the final say on *all* decisions instead of "specified decisions," as required by *Nicaise*, 245 Ariz. at 568, ¶¶ 12–13, and A.R.S. § 25-401.

¶15 Under section 25-401(2) "[j]oint legal decision-making" means that "both parents share decision-making and neither parent's rights or responsibilities are superior except with respect to *specified decisions* as set forth by the court or the parents in the final judgment or order." (Emphasis added.) Thus, a joint legal decision-making order may give one parent final authority "with respect to specified decisions as set forth by the court . . . in the final judgment or order." *Id.*

¶16 Further, in *Nicaise*, the supreme court explicitly rejected the argument that "any order vesting 'superior' decision-making authority in one parent necessarily establishes sole legal decision-making authority." *Nicaise*, 245 Ariz. at 568, ¶¶ 9–10. As the court explained, joint legal decision-making with final decision-making authority differs from sole legal decision-making authority because the former orders both parties to engage in good-faith consultation and preserves some legal authority for the parent with non-final authority. *Id.* at 568–69, ¶¶ 14–15. But the supreme court explained that A.R.S. § 25-401(2) allows a court to make one parent's legal decision-making authority "superior in some circumstances," i.e., as to "certain issues" specified in the "final judgment or order." *Id.* at 568, ¶¶ 12–13. Indeed, the family court order reviewed in *Nicaise* outlined the types of decisions subject to the presumptive authority of one parent. *Id.* at 567, ¶ 3 ("Father shall have the ability to make the final decision as to medical, mental health, dental, and therapy issues . . . .").

¶17 We agree with Father's contention that when a court orders joint legal decision-making authority, it cannot grant presumptive final decision-making authority to one parent for all parental decisions. *Nicaise*, 245 Ariz. at 568, ¶¶ 12–13. Here, the court awarded Mother final decision-making authority for "major issue[s]" on which the parties disagree. Standing alone, if a "major issue" is any issue on which the parents disagree, such a grant could run afoul of *Nicaise* and A.R.S. § 25-401(2). Thus, a court should provide some explanation to make it clear to the parties and reviewing court the exact extent to which the court has vested superior decision-making authority in one parent.

¶18         The court's order in this case meets that threshold:

> **Decision Making Authority -** Parental decisions shall be required for major issues in raising the children and in meeting on-going needs.  When they arise, each parent shall give good faith consideration to the view of the other and put forth best efforts to reach a consensus decision.  If the decision involves medical or schooling issues, the parties may further elect to seek input from treating physicians or educators.  Both parents shall be provided with such input.  If they cannot agree after making a good faith effort to reach an agreement:
>
> > **IT IS ORDERED** that if they cannot agree after making a good faith effort to reach an agreement, any such major issue Mother shall have "presumptive decision-making authority."

¶19         The order explains that there are many "major issues" involved in raising the children but carves out "medical or schooling issues" for special attention and provides that Mother would have presumptive decision-making authority over "such major issues." Thus, consistent with *Nicaise* and A.R.S. § 25-401(2), we interpret the court's order as granting Mother presumptive authority only over "such issues," i.e., "decision[s] involv[ing] medical or schooling issues."[1]

### B.    Parenting Time.

¶20         Father argues the superior court erred by awarding unequal parenting time without just cause.

---

[1]    We acknowledge that in *Adkisson v. Keith*, an unpublished memorandum decision, we approved an order granting presumptive decision-making authority that was not limited to specific issues. 1 CA-CV 20-0193 FC, 2021 WL 248168, at *3, ¶¶ 15–16 (Ariz. App. Jan. 26, 2021) (mem. decision); Ariz. R. Sup. Ct. 111(c) ("Memorandum decisions of Arizona state courts are not precedential . . . ."). Because the order in this case contains language limiting Mother's superior authority to "medical and schooling issues," we need not determine whether *Adkisson* is consistent with *Nicaise* and A.R.S. § 25-401(2).

¶21 Under A.R.S. § 25-403.02(B), courts must adopt a parenting plan "[c]onsistent with the child's best interests." As a matter of public policy, absent evidence to the contrary, "it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B)(1). But there is no presumption of equal parenting time. *Smith v. Smith*, 253 Ariz. 43, 46–47, ¶¶ 17–19 (App. 2022). Rather, "the superior court 'has discretion to decide parenting time based on all the evidence before it . . . .'" *Id.* at 47, ¶ 18 (quoting *Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶¶ 11–12 (App. 2020). And we do not reweigh evidence on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019).

¶22 Here, the court awarded Father parenting time amounting to 136–141 days per year, concluding that an equal division of parenting time between Mother and Father was contrary to the best interests of the children. The court found that the children "appear to be adjusted to their schooling at home" and that it is in the children's best interests that their lives remain as they were pre-dissolution with as little disruption as possible. Also, the court found that a week-on, week-off schedule was unsuitable because Father would "be unable to [sic] all that the minor children require" due to his work schedule. Mother testified to Father's "very limited" involvement in the daily care of the children, and the court refused to order a parenting-time arrangement that was likely to result in Father's mother supervising the minor children during his time with them. The court was also concerned by Father's unwillingness to allow the children to contact Mother during his parenting time.

¶23 On appeal, Father argues he is "equally capable of continuing the home school education for the younger children during his parent time." But the record suggests that Father has not been significantly involved in the children's education. For example, Father testified that he did not attend his public-school-aged children's parent-teacher conferences and could not remember their teachers' names. Mother testified that she had not seen Father engage in the children's education. Despite claiming that he would be capable of homeschooling the children during his parenting time, Father acknowledged that he had never done so. Conversely, Mother had been solely responsible for homeschooling the children.

¶24 Because substantial evidence supports the superior court's finding that it is in the younger children's best interests for Mother to continue their homeschooling education, the court did not abuse its discretion by awarding an unequal parenting-time schedule.

### C. Required Supervision of Paternal Grandmother.

**¶25** Father argues the superior court erred by ordering that Grandmother be supervised whenever she is around the children. Father failed to cite any authority that the court lacked discretion to do so. *See* ARCAP 13(a)(7) (requiring "citations of legal authorities").

**¶26** Even if Father argued that the court abused its discretion, "competent evidence" supports the order. *Little*, 193 Ariz. at 520, ¶ 5 (citing *Fought v. Fought*, 94 Ariz. 187, 188 (1963)). The court heard testimony from Father's sister and Mother that Grandmother is very strict with young children and does not take parents' wishes into account. Such substantial evidence supports the court's finding and we do not reweigh the evidence or witness credibility on appeal. *Lehn*, 246 Ariz. at 284, ¶ 20. The court did not abuse its discretion by ordering supervised visitation.

## II. Child Support.

**¶27** "We review child-support awards for abuse of discretion." *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016).

### A. Income Attribution.

**¶28** Father argues the superior court erred by not imputing income to Mother in calculating child support. Specifically, Father argues that (1) his expert's testimony that Mother "was employable and had earning capabilities of $50,000–$60,000 per year," was uncontradicted, (2) Mother does not have a child with mental or physical needs requiring her presence in the home, (3) there was no evidence presented to the court showing that the cost of child care would be prohibitive, and (4) the court wrongly came to its calculation based on its findings that Mother should continue to homeschool the children.

**¶29** Generally, the court presumes that a parent can earn at least the state or federal minimum wage. A.R.S. § 25-320 ("Guidelines") § II.A.4.b. But "[i]n determining whether to attribute income, the court considers the *child's best interests* and all other relevant factors." *Id.* § II.A.4.e. (emphasis added); *see Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 8 (App. 2015) ("When applying the Guidelines, the 'paramount factor' a court must consider is the best interests of the child."). And in determining whether unemployment that is "voluntary with reasonable cause" serves the child's best interests, the court considers "whether the parent's decision and its benefits outweigh the effect that the reduced income has on the child's best interests." Guidelines § II.A.4.e.ii.

8

¶30 The court found it was inappropriate to attribute income to Mother because (1) their child with a cleft palate has unusual emotional or physical needs based on his need for medical treatment, (2) Mother is homeschooling their three youngest children, requiring her presence in the home, and (3) the cost of childcare is prohibitive.

¶31 In its best-interest findings, the court found it was in the children's best interests for Mother to continue homeschooling the three youngest children. Further, Mother testified she could not both homeschool the children and work either full or part-time. *Cf. McNutt v. McNutt*, 203 Ariz. 28, 33, ¶ 20 (App. 2002) ("[T]rial courts should generally not attribute additional income to a parent that would require an extraordinary work regimen."). Thus, the court could have concluded that any job would impair Mother's ability to homeschool, counter to the children's best interests. *See* Guidelines § II.A.4.e.ii. (stating that the court considers whether unemployment "and its benefits outweigh the effect that the reduced income has on the child's best interests").

¶32 Alternatively, and contrary to Father's assertions, the court heard conflicting evidence about Mother's employment potential. Although Father's expert testified that Mother could find remote work, Mother testified that post-separation, she applied to 12 entry-level positions paying between $18–$20 per hour and received only one interview with no offer. *See Lehn*, 246 Ariz. at 284, ¶ 20 (noting we do not reweigh the evidence or witness credibility). In light of the factors and evidence considered by the court, *supra* ¶ 30, Father has failed to demonstrate the court abused its discretion by declining to attribute income to Mother. *See* Guidelines § II.A.5.b.iii. (explaining that, in determining whether to attribute income, courts should consider whether a child has unusual physical needs requiring the parent's presence in the home).

## B. Support Overpayment.

¶33 Father also argues the superior court erred by not reimbursing his child-support overpayment. After the court issued its dissolution decree, Father filed a motion to amend because the court, in calculating his income for child support, increased instead of reduced his income by his spousal maintenance obligation. *See* Ariz. R. Fam. L. P. 83(a)(1). Because of the mathematical error, the court found good cause to amend the judgment and reduced his child support obligation from $3,762 to $2,192 per month. The court did not, however, order reimbursement for Father's overpayment.

¶34 Once the court issues a final child-support order, the court may not order reimbursement for the overpayment until after Father's child-support obligation terminates. *See* A.R.S. § 25-527(B) ("The court may enter a judgment for reimbursement against the obligee if the court finds that the obligor's obligation to pay support has terminated . . . ."); *Brucklier v. Brucklier*, 253 Ariz. 579, 585, ¶ 33 (App. 2022) ("The statute encapsulates the rule that child support overpayments cannot be credited against future support obligations."). The court did not err by declining Father's request for reimbursement.

## III.    Spousal Maintenance.

¶35 Father argues the superior court erred when it calculated spousal maintenance by declining to attribute income to Mother. Essentially, Father repeats his arguments regarding child support—i.e., Mother is capable of working, their children do not have special medical needs, and Mother would have time to work had the court ordered an equal parenting-time schedule. We review spousal-maintenance awards for abuse of discretion. *Sherman*, 241 Ariz. at 112, ¶ 17.

¶36 In determining whether to attribute income to a party who is voluntarily unemployed with reasonable cause, the spousal maintenance guidelines instruct the court to consider "whether the party's decision and its benefits outweigh the impact of the reduced income on the party's ability to become self-sufficient . . . ." Ariz. Spousal Maintenance Guidelines § III.B.2.f.ii. The court also considers the ability of the party to find employment and the wage they could receive. *Id.* § III.B.2.d–e.

¶37 Here, the superior court found spousal maintenance was appropriate because the Webbers homeschool their young children and Mother could not find suitable employment because of her long absence from the workforce. And as discussed *supra* ¶¶ 31–32, the court both found that continuing to homeschool the three youngest children is in their best interests and heard Mother testify she could not both work and homeschool the children. Thus, on this record, the court could conclude the benefits of Mother's decision to homeschool the children "outweigh the impact of the reduced income on the party's ability to become self-sufficient." Ariz. Spousal Maintenance Guidelines § III.B.2.f.ii. The court did not abuse its discretion by declining to attribute income to Mother for its spousal-maintenance calculation.

10

## IV.     Community Debt.

¶38      The court declined to treat Father's medical-school loan as community debt and assigned the entire debt to Father.  Father and Mother dispute how the proceeds from his loan were used.

¶39      As discussed *supra* ¶ 5, the parties only contest the portion of Father's medical-school loan that was not used for tuition or schooling purposes.  Father argues that Mother should share in the portion of the student-loan debt they used for living expenses during his time in medical school.  At trial, Father claimed that his student loan from college was paid off before he took out the medical-school loan.  Mother claimed that Father's college loans were rolled into the medical-school loan.  She also claimed she had worked for a year and a half while Father was in medical school.  The superior court also considered Father's testimony that his student loans could be forgiven in ten years.

¶40      The superior court has broad discretion to divide community property equitably upon dissolution.  *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007).  Regarding debt, the court may, but is not required to, attempt an equitable distribution.  *Styers v. Superior Ct. In & For County of Mohave*, 161 Ariz. 478, 479 (App. 1989).  We review the court's allocation of community debt for an abuse of discretion.  *Boncoskey*, 216 Ariz. at 451, ¶ 13. The court abuses its discretion "when the record is 'devoid of competent evidence to support the decision,' or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (citing *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009).

¶41      Although the parties dispute whether a portion of Father's medical-school loan is comprised of separate debt, they did not dispute that part of the medical-school loan funded at least some of the family's living expenses during Father's time in medical school.

¶42      But, beyond showing the portion of the medical-school loan attributed to tuition, neither party produced evidence showing how the remainder of the loan was used.  In Mother's testimony, she only contested the *amount* of the loan that funded the community and asserted that part of the non-tuition loan was used for other educational expenses, for which Father acknowledged responsibility.   Her testimony impliedly acknowledges that some portion of the medical-school loan covered the family's living expenses.

¶43 "Debts incurred during marriage are presumed to be community debts." *Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 160 Ariz. 218, 220 (App. 1989). Accordingly, the superior court erred in identifying the entirety of the medical-school loan as separate property and assigning the entire debt to Father. The court heard conflicting testimony about whether Father's undergraduate loans incurred before marriage were rolled into his medical-school loans. Although it credited Mother's testimony that Father's separate, premarital debt comprised part of the medical-school loan, the court did not evaluate how much of the loan was separate versus community debt.

¶44 We vacate and remand the community debt finding to allow the court to determine (a) what portion of the medical-school loan is separate property, and (b) the amount of the remaining community debt that was used for community purposes.[2]

¶45 Of course, any reallocation of the debt on remand may also alter the court's spousal-maintenance determination. *See* A.R.S. § 25-319(B)(9). Accordingly, if the court reallocates the debt, it may also reconsider its calculation of the spousal-maintenance award.

## V. Attorney Fees on Appeal.

¶46 Mother requests attorney fees for this appeal under A.R.S. § 25-324 based on the financial disparity between the parties. In our discretion, we decline to award Mother attorney fees. We award costs to Mother upon compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[2] We note the court's finding that Father's medical-school loan will qualify for loan forgiveness after ten years of public service. At oral argument, the parties indicated that Father's loans are eligible for forgiveness in seven years. As Father acknowledges, Mother would also benefit from such loan forgiveness. Father's counsel also assured this Court that, in the event that the superior court divides the debt and it is later forgiven, Father would agree to apply any loan forgiveness proportionally to Mother's portion of the debt. On remand, the court may consider this in its evaluation and any reallocation of community debt.

## CONCLUSION

¶47 For the foregoing reasons, we affirm in part, and vacate and remand in part for further proceedings on the community debt determination.



AMY M. WOOD • Clerk of the Court
FILED: AGFV

13